HICKS *v.* STEEL.[1]

1. CONTRACTS — FRAUD — RESCISSION — RECOVERY OF CONSIDERATION—BANKS—FIDUCIARY RELATIONS—SALE OF NOTE.

The president of a bank, who has been in the habit of helping it to place loans, knowing that it relied on his advice, is bound, in his dealings with the bank, to give it the benefit of his fullest information; and therefore, where he sells it a note, with knowledge that the maker is in straitened circumstances, if not insolvent, and that the indorsers are not financially strong, without disclosing such facts, the bank, on learning the same, may rescind the purchase and recover the consideration.

2. SAME—PLEADING.

Where a contract has been regularly rescinded for fraud, the consideration therefor, if in money, may be recovered in an action for money had and received.

3. SAME—ASSIGNMENT OF CLAIM.

An action to recover the consideration paid under a contract which has been rescinded for fraud is not an action for fraud and deceit in such sense that it cannot be maintained by an assignee of the claim.

4. ACTION BY ASSIGNEE — CONSIDERATION FOR ASSIGNMENT.

In an action by the assignee of a claim, the consideration for the assignment is no concern of the defendant.

5. SAME—JURISDICTION—WAIVER.

An objection that a claim sued upon was transferred to plaintiff solely to enable suit to be brought in a county other than that of defendant's residence should be raised by plea in abatement, and is waived by pleading the general issue.

6. CONTRACTS—FRAUD—RESCISSION—LACHES.

The right to rescind the purchase of a note because of a fraudulent concealment by the seller of facts bearing upon the solvency of the parties is not lost by a delay of 18 months after the maturity of the note before making a tender, where it appears that, while the purchaser may have suspected the worthlessness of the note for some time, he did not become convinced of that fact, or learn of the complicity of the seller, until shortly before the tender was made.

[1] Rehearing denied June 24, 1901.

7. Same—Directing Verdict.

    Plaintiff's testimony being uncontradicted, and establishing a *prima facie* case of constructive fraud on the part of the defendant, a verdict was properly directed for plaintiff.

Error to Clinton; Daboll, J.  Submitted April 13, 1900. Decided May 7, 1901.

*Assumpsit* by John C. Hicks against George A. Steel for money had and received.  From a judgment for plaintiff on verdict directed by the court, defendant brings error.  Affirmed.

*Fedewa & Walbridge*, for appellant.

*Edwin H. Lyon* ( *J. Lee Potts*, of counsel ), for appellee.

Hooker, J.  The defendant was president of the Ithaca Savings Bank, and, at the time of the transaction which gave rise to this action, a resident of St. Johns, in Clinton county.  In June, 1895, he was the owner of a note of $1,000 made by the Mt. Pleasant Lumber & Manufacturing Company, a corporation, payable to the order of I. A. Fancher and F. W. Carr, and by them indorsed.  On June 17, 1895, defendant wrote Price, the cashier of the Ithaca Savings Bank, that he had been informed by one Scott that the bank would like some short-time paper to discount, and offered some.  Price replied upon June 20th that the notes offered were too large, and said that the bank would prefer something smaller, and nearer home, and added, " If you can send us some short-time paper, of amounts $1,000 or less, and paper that you can recommend, I should be glad to handle it."  June 21st the defendant replied:

"I have a note of D. Scott Partridge, of Mt. Pleasant, indorsed by Carr & Granger, due September 20th, which I could let you have at 6 per cent. discount.  Carr & Granger are rated by R. G. Dun & Co. $75,000 to $125,000, high credit; and their liabilities, all told, do not exceed $5,000.

If you wish either of these matters, please let me know, here. If you would like either of these two latter matters, write Steel, Smith & Co. regarding them.

"Very truly yours,
"GEO. A. STEEL.

"P. S. Can offer you note Mt. Pleasant Lumber & Manufacturing Company note, 6–15, 90 days, $1,000, at 7 per cent. discount, indorsed by F. W. Carr, of Carr & Granger, and I. A. Fancher, of Mt. Pleasant. If none of these offerings are satisfactory, will see if First National, Mt. Pleasant, wishes to sell any paper."

On June 22d Price replied as follows:

"Herewith I return statement of Detroit parties, as per your request. I have written Steel, Smith & Co. that I would discount the McLachlan Transportation Company note; also Harper, Heizner & Co. I expect to receive the Partridge and Mt. Pleasant Lumber & Manufacturing Company notes from you tonight.

"Very truly,
"C. A. PRICE, Cashier."

June 22d defendant sent notes, with letter as follows:

"*My Dear Sir:* I inclose herewith note of Mt. Pleasant Lumber & Manufacturing Company, and D. Scott Partridge, for $1,000 each, and have made draft on you, through St. Johns National Bank, for proceeds of same, which please protect."

The Mt. Pleasant Company note was dated June 15th, and ran 90 days. On September 16th, defendant wrote as follows:

"C. A. PRICE, Esq., Cashier,
"Ithaca, Mich.

"*Dear Sir:* I wrote the Mt. Pleasant Lumber & Manufacturing Company that their note $1,000, June 15th, 90 days, could be renewed for a similar period by sending me a note similarly made and indorsed, together with check for discount. Through an error in entering it on my books, I had maturity of it on the 17th inst., instead of the 16th, and hence am a little late in writing you regarding it. Have asked Mt. Pleasant to do what was necessary to hold the indorsers on the paper, and hold it for a day for us, until I could communicate with you.

Do you wish a renewal of this matter on same terms as we had it before?      '      Very truly yours,
"GEO. A. STEEL."

September 17th, Price replied:

"*Dear Sir:* Replying to your letter of the 16th inst., would say that we are not in need of the money on the note at present. If you consider their financial standing just as good now as it was when we took the note, and advise the bank to accept a renewal for 90 days, we will ' do so; the rate to be 7 per cent. discount.
"Very truly,
"C. A. PRICE, Cashier."

The correspondence was closed by the following letter: '

"September 18, 1895.
"C. A. PRICE, Esq., Cashier,
"Ithaca, Mich.
"*Dear Sir:* I beg to acknowledge receipt of your favor of the 17th inst., and note contents. I have taken for myself, and am carrying, several notes similar to the one about which you wrote, and have considered their financial standing just as good now as when we took the other notes, and believe the paper good. Accordingly I inclose herewith Mt. Pleasant Lumber & Manufacturing Company's note September 16, 1895, $1,000, indorsed by I. A. Fancher and F. W. Carr, together with draft to Steel, Smith & Co., Detroit, Mich., for $18.08 discount on same, and have requested First National Bank of Mt. Pleasant to return note sent them by you, of which this is a renewal, which please cancel and send to me on list.
"Very truly yours,
"GEORGE A. STEEL."

The entire negotiation is contained in the correspondence given. The renewal note given September 16th became due in December, and shortly before defendant wrote as follows:

"C. A. PRICE, Esq., Cashier,
"Ithaca, Mich.
"*Dear Sir:* Owing to the fact that the Mt. Pleasant Lumber & Manufacturing Company have been unable (as is the general experience this year) to sell any considerable portion of their output as yet, they may want to renew

their note for $1,000, indorsed by I. A. Fancher and F. W. Carr, maturing in a few days. Would suggest, in this connection, that you instruct the bank at Mt. Pleasant to accept waiver of protest of indorsers pending adjustment or arrangement. Will be here until Monday evening.                      Hastily,
                              'GEO. A. STEEL.''

Price did not answer, and the note was protested for nonpayment. On January 18, 1896, defendant wrote as follows:

"C. A. PRICE, Cashier,
                "Ithaca, Mich.
    "*Dear Sir :* I am this morning in receipt of a letter from Steel, Smith & Co., who state they have received a note of $1,000 made by D. Scott Partridge, indorsed by Carr & Granger, dated January 16th, payable 90 days after date, at their office in Detroit, with the request that similar note due January 21st, and held by you, be taken care of. I would be pleased if you would take this paper, and would say that we can make the rate on it 7 per cent. I consider Carr & Granger perfectly good, as I do not believe their liabilities, all told, of every name and nature, exceed $5,000. Please write Steel, Smith & Co., at Detroit, direct, in regard to the matter, so they will get the letter Monday. If you decide to take it, they will pay the note, and make draft on you for the amount, and send renewal to you.
                    "Very truly yours,
                        "GEO. A. STEEL.
    "Father ill today, and has not been to the office. Will send notes Monday.                      G. A. S."

Steel, Smith & Co. was a firm of brokers dealing in commercial paper, and the defendant was a member of said firm.

On January 2d a renewal of the note was taken for one month. It is said that suit was brought on this last renewal note, and judgment rendered, and execution was returned unsatisfied. The judgment was not admitted in evidence; the transcript showing it to have been rendered against the Mt. Pleasant Manufacturing Company, instead of the Mt. Pleasant Lumber & Manufacturing Com-

pany. It does not appear that the other proceedings were not also thus entitled.

There was testimony that the maker and indorsers were insolvent at the time the original note was taken. The declaration charges the defendant with fraud and deceit whereby he induced the Ithaca Bank to purchase the note and to accept renewals, alleges a tender of the note to defendant by the bank, and demand of a return of the money paid for it, and his refusal, and that before suit the bank assigned to the plaintiff, one of its stockholders, all its right, title, and interest in and to its claim. The common counts, accompanied by allegations of assignment, were added to the special counts.

The defendant did not testify, and, though one witness was called upon the part of the defense, the case stands substantially upon the testimony introduced on behalf of the plaintiff. That testimony tended to show that the defendant, as president and director of the savings bank, took an active part in its affairs, and at times helped it to loans, which he was able to do, through his connection with the brokerage firm of Steel, Smith & Co., of Detroit, and possibly other concerns. It tended to show, further, that he began the correspondence which led to the purchase of the lumber company note, and that, when he offered the note in the letter of June 21st, he stated that he had a note, etc.; and we think it cannot be said that he misrepresented the fact of his ownership, though it is not improbable that the bank's cashier may have supposed that it was not Steel's note. This letter, however, states that the indorsers were rated high by Dun & Co. It also appeared upon the trial that the maker of the note was a corporation in straitened circumstances, and that Steel was a stockholder and large creditor of the concern, and probably knew of its condition and that of the indorsers, and these things he did not disclose. The crucial question in the case is whether his relation to the bank was such, in this transaction, as to entitle it to a full disclosure of his information, and whether the failure of the defendant to

impart it entitled it to rescind the contract upon discovery of the true state of affairs.

Steel was president and director, it is true, but he was also dealing with the bank in an ordinary business transaction, which the law did not forbid. A director may do business with a bank, and may borrow money or discount notes, so long as he does not act for the bank as well as himself; and his relation to the bank may be not different from that of any other patron. But where the circumstances show that the bank has relied upon him to aid in conducting its business, and he has availed himself of the opportunity afforded by his official relations to the bank to obtain an undue advantage, the law permits a rescission by the bank upon discovery of the facts. See *Twin-Lick Oil Co.* v. *Marbury*, 91 U. S. 587, and cases cited; *Porter* v. *Woodruff*, 36 N. J. Eq. 174; 1 Morse, Banks and Banking, § 125; *Conyngham's Appeal*, 57 Pa. St. 481. The testimony makes a *prima facie* case of that kind. With knowledge that the maker of the note was in straitened circumstances, if not insolvent, and at a time when the indorsers were not financially strong, if they were solvent, knowing that the cashier was in the habit of acting upon his advice, and accepting his aid as director in obtaining outside loans, he sold this obligation to the bank, and afterwards induced the cashier to renew it. The letter of the cashier was direct notice to Mr. Steel that the bank was relying upon his recommendation, and intended to accept no paper which Mr. Steel could not recommend. In view of this, the defendant's offer implied a recommendation of the paper. It was therefore his duty to disclose fully any facts which affected the responsibility of the maker and indorsers of the paper. This we think the *prima facie* showing indicates he did not do, and, while there is no evidence of active fraud or misrepresentation, we think the record discloses that the defendant did not perform his full duty to the bank, within the rule laid down in the authorities cited *supra*. We are of the opinion, therefore, that the court did not

err in holding that the bank had the right of rescission, and was entitled to recover back the consideration paid, in an appropriate action.

The defendant claims that this is an action brought to recover for fraud and deceit, and that such a claim is not assignable, and consequently a verdict should not have been directed in favor of the plaintiff. The plaintiff contends that his action is not brought for damages arising from alleged fraud and deceit of the defendant, but to recover money paid upon a contract which he has elected to rescind, for the reason that he was induced to make it by the fraud and deceit of the defendant. He maintains that in such a case he may recover the consideration by replevin, if it is a chattel, and in an action upon the money counts, if he parted with money, as in this case.

It is settled that a chose in action is assignable, and that the assignee may sue and recover in his own name for a sum due his assignor. Where one is justified in rescinding a contract, he is entitled to recover the consideration paid; and, where the consideration is money, an action for money had and received will lie, as is shown by the following Michigan cases cited by counsel: *Beardslee v. Horton*, 3 Mich. 560, 562; *Little* v. *Derby*, 7 Mich. 325; *Moore* v. *Mandlebaum*, 8 Mich. 433; *Catlin* v. *Birchard*, 13 Mich. 110; *Blackwood* v. *Brown*, 34 Mich. 4; *Atkinson* v. *Scott*, 36 Mich. 18. The bank might, then, have recovered in such an action, and we see no reason for saying that it may not assign its claim for such money, it having become a fixed liability by the rescission. *Final* v. *Backus*, 18 Mich. 218; *Cook* v. *Bell*, Id. 387.

Several other questions demand consideration. At the time the action was commenced, the defendant was a resident of Detroit, and process was served upon him while temporarily in Clinton county, where the plaintiff then resided, to whom the claim was assigned for the sole purpose of having suit brought in Clinton county. When this appeared upon the trial, a motion was made to dis-

miss the action for want of jurisdiction, and this was denied. The question was raised in other ways. The defendant is in no position to question the consideration for the assignment. *Seligman* v. *Ten Eyck's Estate*, 49 Mich. 104 (13 N. W. 377); *Hake* v. *Buell*, 50 Mich. 89 (14 N. W. 710); *Coe* v. *Hinkley*, 109 Mich. 612 (67 N. W. 915). The other question should have been raised by plea in abatement. Instead, the defendant pleaded the general issue. The declaration fully apprised him of the assignment. He knew all of the parties. We think the point is ruled by *Watkins* v. *Plummer*, 93 Mich. 217 (53 N. W. 165).

It is contended that the right to rescind the contract was lost through the laches of the bank; that it learned in March, 1896, that it would not be paid, yet did not tender the note to Steel until August, 1897. Previous to the time that this note was purchased, the cashier had made a practice of acting in conjunction with Steel, as the president of the bank, in obtaining paper. On this occasion it is not unreasonable to believe, as Price states, that he understood that he was dealing with him in such relation; and, while Steel wrote that "he had a note," Price might naturally suppose that the note was discounted for the lumber company, and not for Steel, and that the lumber company, and not Steel, received the money paid for it. Again, Price testified that the directors were unaware of the insolvent condition of Carr and Fancher until about the time of the alleged tender of the note to Steel; and it does not appear that they knew or had reason to believe at an earlier day that Steel knew of their insolvent condition. These things constitute sufficient reason for not rescinding earlier. If the purchase was understood to be from the lumber company, there was no reason for tendering back to Steel, as he could not be supposed to have received the consideration; nor was there any occasion for a rescission so long as there was no reason to suppose that Steel knew that Carr and Fancher were insolvent. The interview in March indicates that they had a suspicion, if

not belief, that the note was not good; but this alone was not enough to require an attempt to rescind. We are of the opinion that the record does not show laches which should be held to constitute a waiver of the right to rescind.

It is urged that the court erred in directing a verdict, instead of submitting the case to the jury. No testimony was offered upon the merits upon the part of the defense. The relations of Steel to the lumber company and to Carr and Fancher render it improbable that he was ignorant of their pecuniary condition, and that he believed that the commercial report, upon the faith of which, and its president's judgment, the bank may reasonably be supposed to have purchased, was accurate. If the case was not a strong one, it was, in the absence of a defense, a *prima facie* one, and we cannot say that the court erred in so deciding.

The judgment is affirmed.

The other Justices concurred.