HAAS v. MALTO-GRAPO CO.

1. Principal and Agent—Contract of Appointment—Construction—Compensation.

Where a contract appointing a sales agent provides for a salary and commissions on sales, and also names a minimum amount of sales per month that shall be regarded as a fulfillment of the contract, the agent is not entitled either to salary or commission unless the sales reach the minimum amount.

2. Same—Fulfillment of Contract—Delay—Waiver.

Delay of the principal in opening an office for the agent and supplying him with goods as agreed in the contract of agency is waived by accepting the office and goods when furnished.

3. Same—Goods Furnished—Quality—Question for Jury.

Whether goods shipped to an agent, and for which he had paid in advance, were inferior and overcharged for, held, under the evidence, a question for the jury.

4. Evidence—Written Contract—Parol Evidence — Admissibility.

Letters antedating and leading up to the making of a written contract are inadmissible to vary its terms.

5. Appeal and Error—Practice—Errors Favorable to Appellant—Assignment by Appellee.

'Defendant in error, by joining in the bill of exceptions and including assignments of error, is not entitled to have reviewed errors favorable to the plaintiff in error, but must take out a writ of error himself if he desires review of such errors.

Error to Van Buren; Des Voignes, J. Submitted February 21, 1907. (Docket No. 109.) Decided May 18, 1907.

Assumpsit by W. E. Haas against the Malto-Grapo Company, Limited, for breach of a contract of employment. There was judgment for plaintiff on a verdict directed by the court for an insufficient amount, and he brings error. Reversed.

*Anderson & Warner*, for appellant.

*Benjamin F. Heckert* and *Thomas J. Cavanaugh,*
for appellee.

HOOKER, J.   The plaintiff has brought an action of
assumpsit, based upon a contract, joining a count for
breach of the contract with the common counts.   This
precludes a claim of fraud, under the settled rule that the
action is consistent only with the validity of the contract.
It is clear that the contract has not been performed,
therefore this cannot be treated as an action for compen-
sation, after full performance, under the common counts.
The plaintiff must stand, then, upon one of two theories:
*First,* that defendant has broken its promises entitling
plaintiff to damages; *second,* an action for the value of
his services, subject to a right of recoupment, if the cir-
cumstances should warrant it.

We have searched the record in vain for evidence that
the case was tried on the latter theory.   It can therefore
be eliminated, and the case, then, must rest upon the
count for breach of contract, and whether the plaintiff
has a right of action upon this theory, practically turns
on the construction of the contract.   We include a
copy:

"This agreement, made and entered into the 20th day
of March, 1905, by and between the Malto-Grapo Co.,
Ltd., party of the first part, and W. E. Haas, party of
the second part, Witnesseth:

"That the parties hereto, after a personal interview,
have embodied the result of all previous and present nego-
tiations into this writing; said agreement being as follows,
to wit:

"1.   The said first party hereby engages the said second
party in the capacity of general sales agent, to conduct a
sales agency in the city of Chicago, State of Illinois, for
a period of two (2) years, from the date that the sales
office is opened for the said second party, as hereinafter
provided for, and for and in consideration of the faithful
performance and fulfillment of each and all of the several
agreements herein contained and agreed to between the

parties, the party of the first part agrees to engage the said second party for a period of twenty-four (24) months, and agrees to pay the party of the second part one hundred and twenty-five dollars ($125.00) per month, and five per cent. (5) additional commission on all sales of said office during the continuance of this contract.

"2. The party of the first part agrees, at its own expense, to open and fit up an office or salesroom for the use of the party of the second part, at said city, in which the party of the second part shall carry on said business as herein provided for, and the party of the first part further agrees to supply stationery and circulars for the proper handling of the business. Also to sell and deliver such stock as it manufactures and sells as the trade of said office may require from time to time, at forty per cent. (40 per cent.) discount from retail or list prices, and to instruct said second party in the details of handling the business until he is sufficiently instructed in the estimation of said first party.

"3. At the expiration of the term and fulfillment of this agreement, the party of the first part further agrees to repurchase from said second party all stock that he may have on hand, purchased from said first party, paying therefor in cash the same prices originally charged him.

"In consideration of the foregoing and subsequent agreements, the said second party agrees to the following:

"1. That the said party of the second part will and does hereby engage and agree to become general sales agent for the goods manufactured and sold by the party of the first part, as heretofore stipulated, for a term of two (2) years, and that he will devote his whole time and efforts to advancing the success of the business, and to satisfactorily perform the duties herein required of him, dealing honorably with the party of the first part, the public, and all persons with whom he may have business relations.

"2. That said party of the second part will supply no stock to agents, dealers or other purchasers from him that will in any way demoralize the trade, and only for cash with orders, or thirty (30) days' time, if secured by the indorsement of some financially responsible party, or on some satisfactory letter of credit.

"3. Said second party further agrees to carry a stock

of merchandise amounting to one thousand six hundred and sixty-six dollars and 66 / 100 ($1,666.66) at list prices, which shall be an assortment of the various goods manufactured or handled by said first party, such stock and assortment to be selected by the party of the first part, or to be jointly selected, and to be billed to said second party at forty per cent. (40) discount from retail prices, amounting to one thousand dollars ($1,000.00) net.

"4. The party of the second part further agrees to furnish the said first party with daily and weekly reports, and at the end of each month to forward to the party of the first part a report of all business done during the month, giving the names and addresses of any and all agents appointed, a full and accurate statement of expenditures, amount of goods sold, of money collected, and any other information regarding the business that may be desired by the party of the first part.

"5. As the permanent success of this business will depend upon a small amount of merchandise being sold, it is understood and agreed that the sales of each month shall amount to five hundred dollars ($500.00) which shall be considered the minimum amount of business necessary to constitute the fulfillment of this contract. If the sales of any month shall not amount to the minimum amount, namely, five hundred dollars ($500.00) and during the succeeding months sales should be in excess of the minimum amount to make up an average of five hundred dollars ($500.00) per month, this contract will thereby be fulfilled in this respect by the party of the second part.

"If the sales at the end of the first year shall not have averaged five hundred dollars ($500.00) per month, the party of the first part reserves the right to cancel this contract, if it so desires, and upon such cancellation, shall repurchase from said second party all stock that he may have on hand, purchased from said first party, at prices originally charged. All sales to be made to agents at a discount of thirty-three and one-third per cent. (33⅓ per cent.) and to dealers at twenty-five per cent. (25 per cent.), from list or retail prices.

"6. It is mutually understood and agreed between the parties hereto that the said second party shall have the right and authority to collect all moneys for business done through said office, and at the end of each month, after deducting from the receipts of this office, the amount of his own remuneration, to wit, one hundred and twenty-

five dollars ($125.00) and the necessary expenses such as rent, necessary office help, postage, advertising matter, office sundries, commission, etc., he shall remit the balance to said first party at its office in the city of Detroit. The party of the first part will then replace the stock sold during the previous month by the said party of the second part, without additional charge or expense to said second party, and in case the minimum amount of business required to be transacted shall not be sufficient to pay the necessary expenses of the office as herein provided for, cost of replacing stock sold, etc., such deficiency shall be made good by said first party at the end of each month.

"7. It is further mutually agreed by both parties hereto that said second party shall have the right to renew this contract at its expiration, it being understood by both parties that the expenses incident to the opening of this office constitute the necessity of a permanent arrangement.

" In witness whereof the parties of this contract have hereunto set their hands and seals in duplicate the day and year first above written.

[Corporate Seal.]

"MALTO-GRAPO CO., Ltd.
"Per F. S. DOUD, Gen. Mgr.   [Seal.]
"W. E. HAAS.   [Seal.]
"Received of W. E. Haas, one thousand dollars ($1,000.00) in payment for stock as per above contract.
"MALTO-GRAPO CO., Ltd.,
"F. S. DOUD, Gen. Mgr."

Much is said in the briefs regarding the unfairness of this contract, and it can be truly said that it would have been quite as easy to give greater prominence to the fact that the plaintiff was not to be entitled to salary or commission, when his monthly sales were less than $500, as to separate the provisions relating to the subject, and thereby make plausible the charge of a design to mislead the plaintiff; but we feel compelled to say that the language will admit of but one interpretation, and we cannot say that the plaintiff did not fully comprehend it. He testified that he ceased to conduct the business under the contract about July 22d, and did not send in a monthly statement covering that month, as required by the contract, but sold the remainder of the property as well as he could.

His report for May shows that his sales were $48.12, while his office expenses amounted to $95.75. He claimed a

| | |
|---|---|
| Balance on expenses | $41 63 |
| Salary for May | 125 00 |
| Commission | 2 40 |
| Total | $169 03 |

He asked a check for this amount. This demand was mailed June 1st. On June 3d the defendant called attention to the fact that he had not complied with the minimum claim of the contract. For June the receipts of the month were $218.78; the expenses $209.11. He did not report for July, but testified that his sales were approximately $110, and expenses $190. He has not shown himself entitled to payment of salary or commission under the contract. This disposes of the first and second points discussed in the brief of the plaintiff's counsel.

The third proposition is that the defendant unreasonably delayed the opening of the office in Chicago. The contract was made March 20th, and provided for plaintiff's engagement from the date that a sales office should be opened in Chicago, which was done May 1st. The plaintiff found fault with the delay. The learned circuit judge was of the opinion that plaintiff had waived any claim that he may have had, upon this ground, by a letter in which he stated that defendant's representative had "opened and fitted up the office in a satisfactory manner," etc., and "you have fully complied with your contract up to date." So far as this delay is concerned, we think that the decision was right, and the same is true as to the delay in receiving the first consignment of goods of which the bill of lading was given to the plaintiff at that time. The goods were then in Chicago, but, not being delivered promptly, he investigated and found that they had been delivered to other parties, and they were not recovered and delivered until May 9th. There is nothing to indicate any blame on the part of the defendant or its agents. While the contract bound the defendant to sell

and deliver goods to plaintiff at prices mentioned, we think it obvious that its duty was done when it properly and seasonably shipped such goods charges prepaid, and forwarded the bill of lading subject to its duty to reimburse for cartage. As soon as the error of the railroad company was brought to its notice, its officers hastened to find and see that the goods were delivered. The defendant was at liberty to appoint other agents in Chicago. There is nothing in the contract which deprived it of such right.

A claim is made that the goods shipped the plaintiff, and for which he paid in advance, were inferior goods, and were overcharged for. There are three such items: (1) 53 cases of Paw Paw grape juice for which he was charged $1.20 per gallon; (2) 60 cases apple juice, at $4.20 per case; (3) 55 cases Blood of the Grape, and not Malto-Grapo. The plaintiff claims that the retail or list price of the Paw Paw grape juice was less than the amount at which it was billed to him, and he offered testimony tending to show one instance where it had been sold at 60 cents. This was explained as a contract made at a special price some months before the contract with plaintiff was made. To prove his claim as to the apple juice, plaintiff offered to introduce a portion of an advertising circular issued by the defendant, in which the price per case was $3.25. The court is said to have excluded this because it was shown that it may not have been the price established for the year 1905. The 55 cases were claimed to have been of a quality inferior to Malto-Grapo. They were labeled "Blood of the Grape," and this was not manufactured by the defendant. Some correspondence followed their shipment, and some time afterwards defendant offered to replace them upon their being returned. This correspondence began June 28th, when he wrote defendant that he held the goods subject to their disposal, and continued until August 2d. We are of the opinion that these were questions which should have gone to the jury. Complaint was made as soon as the error was dis-

covered, and even if it was his duty to ship the goods back, before shipment of those to be substituted, the correspondence shows a long delay and some difficulty in inducing defendant to adjust the matter.    If there was any substance in plaintiff's claim, he might have suffered damage, even though a substitution had been made later.

Error was assigned upon the exclusion of three letters, antedating and leading up to the making of the contract. They were inadmissible.    The contract was the culmination of the negotiations, and as the case was presented we do not see that the plaintiff's rights were injured by their exclusion, if they would be admissible under any circumstances which we do not decide.

Error is assigned upon the exclusion of an item of $4 for a sign.    It would have been proper to submit the item to the jury.

The defendant joined in the bill of exceptions, and included assignments of error.    The court ruled that under this contract the defendant was under obligations to replenish plaintiff's stock and directed a verdict for plaintiff, for amounts agreed to represent the quantity of goods claimed.    Defendant's counsel insist that this was erroneous.    As the matter stands, the plaintiff has a judgment for these items.    He has taken a writ of error, but the defendant has not.    The parties evidently acted upon the assumption that one writ would bring up both appeals. We think this is not a proper practice.    As there is yet time to take a writ of error, and as the case must be tried again, we dispose of the question.    We agree with the construction placed upon the contract in this particular.

For the reasons stated, the judgment is reversed, and a new trial ordered.

McALVAY, C. J., and CARPENTER, OSTRANDER, and MOORE, JJ., concurred.