RHOADES *v.* MALTA VITA PURE FOOD CO.

1. CONTRACTS — CONSIDERATION — ILLEGALITY — PUBLIC POLICY— PREVENTION OF COMPETITION—FRAUD.

A contract of employment, entered into for the primary purpose of inducing the employé to break a similar contract with another employer and deprive it, as a competitor, of the benefit of the skill and experience of the employé, is illegal and fraudulent and does not furnish a good consideration for a promise.

2. PARTNERSHIP — LIMITED PARTNERSHIPS — CONTRACTS — EXECUTION—SUFFICIENCY—TWO MANAGERS.

A contract by a limited partnership association to employ plaintiff for two years at a salary of $2,000 per year is void if not reduced to writing and signed by at least two managers, as provided by section 6083, 2 Comp. Laws.

3. PLEADING—ISSUES—BILL OF PARTICULARS—SERVICES.

Where, in an action against a corporation, the bill of particulars

claims compensation for services rendered beginning with a certain time, evidence is not admissible which shows a subsequent contract to pay plaintiff for services previously rendered to defendant's predecessor in the business.

4. CORPORATIONS—OFFICERS—AUTHORITY—DELEGATION.
Authority to the secretary and treasurer of a corporation to contract to pay for services rendered to another, for which defendant corporation was in no way liable, does not authorize the officer to delegate such authority to another.

5. SAME—AUTHORITY DELEGATED.
A delegation of authority to employ plaintiff for a corporation, and fix his salary, does not authorize making a contract by which the corporation becomes liable to pay him for services previously rendered for the corporation's predecessor in business.

Error to Calhoun; Hopkins, J. Submitted June 4, 1907. (Docket No. 12.) Decided July 13, 1907.

Assumpsit by Charles E. Rhoades against the Malta Vita Pure Food Company for work and labor. There was judgment for defendant on a verdict directed by the court, and plaintiff brings error. Affirmed.

*Williams & Beck*, for appellant.

*Moore & Moore* (*R. J. Kelley*, of counsel), for appellee.

BLAIR, J. Plaintiff, an expert in the manufacture of cereal flake foods and a millwright, brought suit against defendant for a balance of salary claimed to be due him, filing, with his declaration on the common counts, a bill of particulars of his claim. The charges against defendant in the bill of particulars are:

To two years' salary from Sept. 16, 1901, to Sept. 16, 1903, at $2,000.00 per year_____ $4,000 00
To materials furnished and provided by the plaintiff for the defendant in doing experimental work by the plaintiff for the defendant at its request, as follows: [Stating various items, amounting in the aggregate to]_____     39 59

Defendant is credited with payments of cash, from time to time, amounting to $2,850, leaving a balance claimed to be due the plaintiff of $1,189.59. The defendant is a New Jersey corporation, formally organized under the laws of that State, February 4, 1902. On January 24, 1902, the defendant acquired the property and plant of the Battle Creek Pure Food Company, Limited, a partnership association. Plaintiff entered the employ of the Pure Food Company in the fall of 1900, but left it in May, 1901, to take a position with a company at Buffalo, N. Y., manufacturing a food known as "Force," at a salary of $2,000 per year for one year from May 22, 1901. In August, 1901, plaintiff, in violation of his contract with the Force Food Company, agreed with Mr. A. C. Wisner, a manager of the Battle Creek Pure Food Company and acting for said company, to abandon his contract with the Force Food Company, return to Battle Creek, and enter the employ of the Pure Food Company at a salary of $2,000 per year on a two-years contract. According to plaintiff's proofs, it was understood by him and Mr. Wisner that the primary reason for the agreement between plaintiff and the Pure Food Company was to get the plaintiff out of the employ of the Force Food Company and thereby deprive that company, as a competitor of the Pure Food Company, of the benefit of his skill and experience in installing the machinery in their plant and manufacturing their product. The agreement was to be kept secret, and plaintiff was not to be openly in the employ of the Pure Food Company, but, "as a cover," was to be ostensibly in the employ of others. The object was to "put Force out of business; and he says: 'That is our intention; we have the money back of it, and we will do it.'"

"*Q.* And your coming back to Battle Creek was dishonest?

"*A.* Well, it was not dishonest on my part.

"*Q.* But it was dishonest on his part, and you were willing to aid him in a dishonest purpose on his part?

"*A.* I did aid him.

"*Q.* And you knew that he had a dishonest purpose in getting you back there?

"*A.* Practically so; yes, sir.

"*Q.* Now, will you kindly tell us what his dishonest purpose was?

"*A.* What his dishonest purpose was?

"*Q.* Yes, sir.

"*A.* Well, his dishonest purpose was getting me from the Force Food Company for the protection of the Malta Vita.

"*Q.* Then it was dishonest on his part to get you away from the Force Food Company?

"*A.* It seemed so; yes.

"*Q.* And you were quite willing to be used as a dishonest tool in Mr. Wisner's hands?

"*A.* Not particularly so; I wanted to go away.

"*Q.* Mr. Wisner could not have done anything dishonestly if you had said to him, 'Mr. Wisner, I am not a dishonest man, and I will not aid you in your dishonest scheme.' Did you tell him that?

"*A.* No, sir.

"*Q.* And you joined him in his dishonest scheme?

"*A.* I suppose I did.

"*Q.* And enabled him to further a fraud on somebody, did you?

"*A.* Yes, sir."

The agreement between plaintiff and Mr. Wisner was not binding upon the Battle Creek Pure Food Company for the reasons:

*First.* The transaction was illegal and fraudulent, and did not furnish a good consideration for a promise. *Comstock* v. *Draper*, 1 Mich. 481; *Smith* v. *Barstow*, 2 Doug. (Mich.) 155; *Morgan* v. *Andrews*, 107 Mich. 33, 39; *Angle* v. *Railway Co.*, 151 U. S. 1.

*Second.* Because the agreement was not reduced to writing and signed by at least two managers, as required by section 6083, 2 Comp. Laws. *Citizens' Savings Bank* v. *Vaughan*, 115 Mich. 156. It follows, therefore, that, even if competent proof had been given or offered tending to show liability on the part of the defendant corporation for the debts of the Battle Creek Pure Food Company, which we do not determine, defendant could not be

held upon this contract. Plaintiff's counsel contend, however, that if Judge Hopkins ruled correctly in directing a verdict for defendant, upon the ground that defendant was not liable for the services performed under the contract with Wisner, he erred in refusing to permit plaintiff to prove a new contract between plaintiff and defendant made in November, 1903, wherein it was agreed that plaintiff should receive a salary of $2,000 per year and the balance due him from the Battle Creek Pure Food Company as his compensation for the services to be rendered defendant.

Plaintiff's counsel offered to prove, and put appropriate questions to witnesses to elicit such proof, that at the time of plaintiff's employment by Mr. Roleau, defendant's general manager:

" Mr. Roleau told Mr. Rhoades that he was glad that he, Rhoades, would be able to work for them, but that as to his salary he should see Mr. Wisner; that everything in reference to the hiring of Mr. Rhoades was left to Mr. Wisner, and that anything that Mr. Wisner said would go; that thereafter Mr. Rhoades saw Mr. Wisner and made an arrangement with him whereby he was to perform certain further services for the Malta Vita Company at a salary of $2,000 per year, and that as a part of that arrangement Mr. Wisner promised in behalf of the Malta Vita Pure Food Company that the balance due to Mr. Rhoades upon the original two-year arrangement about which Mr. Rhoades has testified in this case and in reference to which he claims a balance of $1,189 should be paid; that is, that the Malta Vita Pure Food Company, in addition to the payment of $2,000 a year, would pay Mr. Rhoades the $1,189 in question, or that balance, in consideration of the then present employment.

" We desire to show further that Mr. Roleau was at that time general manager of the Malta Vita Pure Food Company, the defendant in this case, with ample power to make such an arrangement as I have stated.

" *Mr. Moore:* You have gone so far now, that I think Mr. Roleau's power in this matter should be shown. I do not understand that he had any such power. I do not understand that Mr. Roleau ever had any power to authorize anybody else to employ that Mr. Roleau or some-

body did employ this man to work for several months after this alleged contract had expired, and that this was the first service he ever performed for the Malta Vita. I object to it.

"*The Court:* The objection may be sustained."

Mr. Roleau testified, reading from the records of the defendant company, as follows:

"I came there September 13, 1902. After May, 1903, I held the office of secretary, and was elected treasurer after Mr. Phelps died. As secretary of the company, I performed the usual duties and the duties of manager. I was made manager at that time—in June, 1903. I read from page 201: 'On motion of Mr. Studebaker, seconded by Mr. Morganthaler, Mr. C. E. Roleau was unanimously elected secretary to fill vacancy then existing.' On page 208: 'On motion of Mr. Cross, seconded by Mr. Morganthaler, it was carried that Mr. Roleau be given charge of the affairs of this company and the conduct of its offices and factories as general manager.' That resolution was put through in the adjourned meeting held June 5, 1903. I acted in accordance with that resolution, and was given charge of the affairs of the company and the conduct of its offices and factories as general manager. I held that office continuously until January 9th, this present year, when the company was dissolved. * * *

"The whole board were principally active as directors in looking after and attending to the affairs of the Malta Vita Pure Food Company during the period of its existence. Of that board, Mr. Phelps, Mr. Wisner, and myself were the members living in Battle Creek. * * * All of the directors of the company except Mr. Wisner and Mr. Phelps, up until I was elected in January, 1904, resided away from the city of Battle Creek."

The proof of a new and independent contract covering this balance of salary was not within the cause of action as limited by the bill of particulars, which claimed compensation for services actually rendered for defendant prior to the making of the contract with Wisner, which plaintiff offered to prove, and the testimony was properly rejected, although the ruling does not seem to have been put upon this ground. The ground upon which the court rested his ruling seems to have been that the authority to

make the contract could not be delegated by Roleau to Wisner. If Roleau himself had authority to bind the corporation to pay for services performed for another corporation and for which it was in no wise liable, he certainly had no authority to delegate such an extraordinary power to another. Furthermore, the offer to prove does not indicate that Roleau attempted to delegate any such authority, but to authorize Wisner to fix the salary of plaintiff for services to be performed in the future. Such delegation of authority would fall far short of warranting the making of the contract alleged by plaintiff.

The judgment is affirmed.

CARPENTER, GRANT, MONTGOMERY, and OSTRANDER, JJ., concurred.