HOYT *v.* PAW PAW GRAPE JUICE CO.

1. PARTNERSHIP ASSOCIATIONS LIMITED—STATUTES—LIABILITY ON
   CONTRACTS—AUTHORITY OF MANAGERS.
   A contract for employment executed by one of the managers
   of a partnership association, limited, and involving a liability
   of more than $500, is invalid under 2 Comp. Laws, § 6083, re-
   quiring the execution by at least two managers of contracts
   creating a liability of over $500.

2. CONTRACTS—QUASI CONTRACTS—MONEY HAD AND RECEIVED.
   Money paid to a partnership association in consideration of a
   contract of employment, invalid for an insufficiency in its
   execution, may be recovered in assumpsit for money had and
   received.

3. ASSUMPSIT—COMMON COUNTS.
   Assumpsit for money had and received is an equitable action
   and can be maintained in all cases for money which, in equity
   and good conscience, belongs to the plaintiff, even without a
   showing of privity between the parties or an express promise
   to pay.

Error to Van Buren; Des Voignes, J.   Submitted June
16, 1909.   (Docket No. 109.)   Decided December 10,
1909.

Assumpsit by Frank L. Hoyt against the Paw Paw
Grape Juice Company, Limited, for the recovery of
money advanced under a contract of employment.   A
judgment for defendant on a verdict directed by the court
is reviewed by plaintiff on writ of error.   Reversed.

*Anderson & Warner*, for appellant.

*Thomas J. Cavanaugh* and *Benjamin F. Heckert*,
for appellee.

HOOKER, J.   The plaintiff paid to one of defendant's
managers, who received it on behalf of the defendant,

$1,000. It went into the hands of its treasurer and was appropriated to its uses. This action is brought to recover it as paid without consideration.

The circumstances constituting the transaction are as follows: The defendant is a partnership association, limited, professedly engaged in the production and sale of grape juice. The plaintiff was a resident of Maine, whose attention was attracted to the defendant through an advertisement of the defendant published in a Maine paper. It was then doing business as the Malto-Grapo Company, Limited; the name being afterward changed. Plaintiff, desiring employment, wrote the concern, and correspondence followed which resulted in an interview at Paw Paw, Mich. As a condition to employment, plaintiff was told by Mr. Miller and Mr. Doud, professing to represent the company, that it would be necessary for him to pay to the company $1,000 for stock in the company to that amount. The arrangement was consummated by the execution of two contracts, as follows:

"This agreement, made in Paw Paw, State of Michigan, this 13th day of December, 1906, by and between the Malto-Grapo Company, Limited, a corporation organized and doing business under and by virtue of the laws of the State of Michigan, party of the first part, and Frank L. Hoyt, of Lewiston, Maine, party of the second part, witnesseth:

" That the parties hereto after a personal interview have embodied the result of all previous and present negotiations into this writing; said agreement being as follows, to wit:

" *First.* That for and in consideration of the performance by the second party of each and all the terms and conditions hereinafter named, the party of the first part does hereby engage the party of the second part in the capacity of sales manager to conduct a sales agency in the city of Lewiston, State of Maine, for a period of two years from date, with option of longer time.

" *Second.* The said party of the first part agrees to furnish and pay for suitable quarters for the business, all office stationery, all printed forms and all advertising matter so far as may be necessary for the successful conduct

of the business in the estimation of the first party, including such stock of goods and samples of the product manufactured or sold by the Malto-Grapo Company, Limited, as may be designated by the first party, and to pay all the traveling expenses of the sales manager when authorized by the party of the first part in writing to make special trips, and to give said second party such instructions as may be necessary in the estimation of the first party for the successful management of the business:

" *Third.* The first party agrees to pay the second party a salary of one hundred and twenty-five dollars ($125.00) per month commencing January 1, 1907, and a commission of five per cent. (5 p. c.) on all sales made in excess of five hundred dollars ($500.00) per month during the continuance of this contract, and, in addition to the salary and commission above mentioned, will allow traveling expenses when authorized by the party of the first part to travel. · The salary and commissions are payable monthly, and all other expenses than those mentioned are subject to approval in writing of the said first party.

" *Fourth.* It is also mutually agreed that the second party shall use his best judgment in selling goods to responsible parties and the commission to be based on accepted orders and shipments made for same. All collections and remittances are to be made direct to the home office in Paw Paw, by the parties to whom sales are made, unless otherwise instructed by the party of the first part.

" *Fifth.* It is agreed and understood that the second party hereto has absolute authority to contract with subsalesmen and agents. Subsalesmen are to sell the retailer and dealer at wholesale prices. Agents are to sell to the consumer at retail or list prices. Said subsalesmen and agents, however, to be employed only on a commission basis, and such commission in no case shall exceed ten per cent. (10 p. c.) to subsalesmen, who sell dealers only. Where said agents sell to the consumer direct they are allowed a commission of twenty-five per cent. (25 p. c.) from the list prices. Said ten per cent. and twenty-five per cent. (25 p. c.) specified herein are for subsalesmen and agents in addition to the salary and commission of sales manager mentioned in the fourth and fifth clauses. Such subsalesmen and agents are furnished with the salesmen's blank report slips, which must be made out each day, giving reports of all sales made and to whom made, and turned in to the sales manager, who shall verify such

reports and mail copies with his regular weekly reports.

"*Sixth.* As the permanent success of this business will depend upon a reasonable amount of merchandise being sold, it is understood and agreed that the amount of accepted and filled orders by the party of the first part from the sales agency of the party of the second part each month shall amount to five hundred dollars ($500.00), which shall be considered the minimum amount of business necessary to constitute the fulfillment of this contract. If the accepted orders of any month shall not amount to the minimum amount, namely, five hundred ($500.00), and during the succeeding months shall be in excess of the minimum amount to make up an average of five hundred dollars ($500.00) per month, then this contract will thereby be fulfilled in this respect by the party of the second part.

"*Seventh.* It is hereby further mutually agreed that should the business of said office be so conducted that the combined sales of the local manager and his subsalesmen and agents do not amount to at least five hundred ($500.00) dollars, per month, then in that case this contract at the end of twelve months may be terminated by mutual consent.

"*Eighth.* The second party as manager agrees to make complete weekly reports, stating the amount of goods sold, and to whom, and setting forth in detail all orders taken by himself and his subsalesmen and agents, and at the end of each month make a complete general report with such information as may be required of him by the company. And it is agreed by the second party that the prices of products are at all times subject to changes, and he is to be governed at all times by the terms and quotations received by the first party and in all matters deal honorably with the party of the first part and the public, and to devote his entire time and diligently and faithfully to the business, and in all things to be governed in the conduct of said employment by the instructions from time to time given by the company, to the end that each and every stipulation herein made separately and as a whole may be fulfilled.

"*Ninth.* The first party further agrees to protect the party of the second part from any prosecution on the sale of our products arising from the Maine prohibitory law.

"MALTO-GRAPO COMPANY, LIMITED.

[Seal of Malto-Grapo "Per ARTHUR R. MILLER, Sec'y.
Co., Ltd., Paw Paw, Michigan.]    "F. L. HOYT."

"This agreement, made and entered into this 13th day of December, A. D. 1906, by and between the Malto-Grapo Company, Limited, of Paw Paw, Michigan, party of the first part, and Frank L. Hoyt, of Lewiston, Maine, party of the second part, witnesseth:

"The party of the second part having this day purchased from the party of the first part one thousand (1,000) shares of the capital stock of the Malto-Grapo Company, Limited, a corporation (par value $1.00 per share), party of the first part agrees, upon the completion by the party of the second part of a certain contract of employment this day entered into by and between the parties hereto, to appoint a successor who will take over the said capital stock held by the party of the second part at par, payment of said stock to be made in cash.

"It is further agreed in case the above-mentioned contract is terminated by mutual consent that the party of the first part will appoint a successor who will take over the said capital stock held by the party of the second part at par, payment of said stock to be made in cash.

"Witness the hands and seals of the parties hereto the day and year first above written.

"MALTO-GRAPO COMPANY, LIMITED,

[Seal of Malto-Grapo    "Per ARTHUR R. MILLER, Sec'y.
Co., Ltd., Paw Paw, Michigan.]    "F. L. HOYT."

At that time, and as part of the same transaction, plaintiff paid over the sum of $1,000, the sole inducement for which was that he thereby obtained employment, as he supposed. Subsequently he received a certificate of stock in the company for 1,000 shares of the capital stock of the Malto-Grapo Company, par value $1 per share, bearing date January 4, 1907, signed by J. D. Northrop, Chairman, and Arthur R. Miller, Secretary. Plaintiff proceeded in the performance of his supposed contract for a month, but then found that he understood his rights under it differently from the understanding of defendant's manager, who refused to pay him the salary of $125 for January. He consulted counsel and was advised that the contract was void under the statute, for the reason that it was signed on behalf of the company by only one person. He thereupon sent defendant the following notice:

"LEWISTON, MAINE, March 4, 1907.
"To the MALTO-GRAPO COMPANY, Limited,
                         "Paw Paw, Mich.:
    "Having waited a reasonable length of time for you to comply with the contract of hire made between your company and myself on or about December 13, 1906, and being convinced that I was led into signing said contract and the purchase of stock in your company by false and fraudulent representations, both as to said stock and as to said contract of hiring, and being further convinced that you do not intend to comply with the agreement as contained in said contract of hiring, and I having no reason to purchase said stock except as a means of obtaining employment and the remuneration therefor promised me in the letters and offers which induced me to sign said contract and in the contract itself as signed, you are hereby notified that I do hereby rescind said contract of hiring and said purchase of stock on the ground of false and fraudulent representations made to me by officers of your company, and on which I relied, and which induced me to enter into said contract of hiring and to purchase said stock. And I rescind the same on the further ground that said contract of hire was the real consideration for my purchase of stock in your company, and you have failed to comply with the terms of said contract, and the consideration for the purchase of said stock has failed.
    "I will transfer said stock to whatever person you name, and the property of the company here is at your disposal. I demand the unpaid balance of my salary which I earned for the month of January, 1907, and I demand back the money I paid for said stock. If this demand is not promptly complied with, I shall bring suit to recover the same and whatever in the way of damages the law will allow.
                         "FRANK L. HOYT."

    It was sent by registered mail; evidence of delivery being the return receipt dated March 9, 1907. This action followed. Upon the trial plaintiff's deposition was read. Defendant offered no testimony. It was conceded that the money paid by plaintiff went into defendant's treasury, that it was a partnership association limited, that Miller and Doud were managers, and that the plaintiff received $58.05, being an advancement of 25 per cent. as

commission on sales made, and his expense account for one month. Defendant expressly denied its liability to make such advancement in the letter inclosing the money. A verdict for the defendant was directed, and plaintiff has appealed.

It is the settled law of this State that a single manager of a partnership association, limited, has not the authority to make a contract that creates a liability for an amount exceeding $500. Section 6083, 2 Comp. Laws, states this in as many words. GRANT, J., with the approval of his associates, said, in *Citizens' Sav. Bank* v. *Vaughan*, 115 Mich. 159 (73 N. W. 144), that:

"The statute governing partnership associations provides as follows (1 How. Stat. § 2369):

" 'And no debt shall be contracted nor liability incurred for said association except by one or more of said managers, and no liability for an amount exceeding $500 except against the person incurring it, shall bind the said association, unless reduced to writing, and signed by at least two managers.'

"Undoubtedly both parties acted in ignorance of this statute; but the statute must control. The liability, being for more than $500, required the signatures of two of its managers to make it valid. Is the mortgage company liable on each note to the extent of $500? Counsel for the bank contend that the indorsement is good for $500, and void for the excess. We cannot concur in this view. The words of the statute are, 'no liability for an amount exceeding $500,' etc. We think the statute contemplates that the invalidity should attach to every contract in its entirety where the amount exceeds $500."

This case was followed in *Rhoades* v. *Pure Food Co.*, 149 Mich. 235 (112 N. W. 940), a case brought against this same defendant by one who sought to recover for his services rendered under a similar contract. He was defeated upon the ground that the contract for service was void.

Under these decisions this contract was a nullity "in its entirety," and it was no more binding upon the plaintiff than the defendant, upon the familiar principle that

158 MICH.—40.

there was a want of mutuality. Miller had not the capacity to make this contract. It was no better than as if made by a stranger. Had plaintiff known that, he would have been justified in treating it as void, and, if his money had been received by the company, it would have been its duty to pay it back upon demand, and, if it refused, the same could have been recovered in a proper action for money had and received to the use and benefit of the plaintiff. It is suggested that this statute precludes the making of a contract except by writing signed by two managers, and therefore no implied contract can arise from the acts of the managers or the receipt of the plaintiff's money by defendant, and therefore plaintiff cannot maintain an action for money had and received. The right to bring this action exists whenever a person, natural or artificial, has in his or its possession *money* which in equity and good conscience belongs to the plaintiff, and *neither express promise nor privity between the parties* is essential. See *Beardslee* v. *Horton,* 3 Mich. 560.

"It is an equitable action, and can be maintained in all cases for money which in equity and good conscience belongs to the plaintiff."

We said, in *Moore* v. *Mandlebaum,* 8 Mich. 433:

"We understand the law to be well settled that the action of assumpsit for money had and received is essentially an equitable action, founded upon all the equitable circumstances of the case between the parties; and if it appear, from the whole case, that the defendant has in his hands money, which, according to the rules of equity and good conscience, belongs, or ought to be paid, to the plaintiff, he is entitled to recover; and that as a general rule, where money has been received by a defendant under any state of facts which would in a court of equity entitle the plaintiff to a decree for the money, when that is the specific relief sought, the same state of facts will entitle him to recover the money in this action."

See, also, *Atkinson* v. *Scott,* 36 Mich. 18; *Corey* v. *Webber,* 96 Mich. 360 (55 N. W. 982); *Hicks* v. *Steel,* 126 Mich. 408, 415 (85 N. W. 1121); *McCurdy* v. *County*

*of Shiawassee*, 154 Mich. 556 (118 N. W. 625). We said in *Hicks* v. *Steel, supra*, that—

"Where one is justified in rescinding a contract, he is entitled to recover the consideration paid; and, where the consideration is money, an action for money had and received will lie."

See 4 Mich. Dig. Title. "Money Received."

It is admitted that this money found its way into the treasury of the defendant, and it has it now, or, if not, it has appropriated it to its own purposes. The claim that the purchase of the stock is a separate and distinct transaction and contract is not tenable under the proof in this case, which shows that it was a part of the arrangement on December 13th; $500 being paid that day, and $500 being sent by draft later. Defendant's own brief implies as much where it states that it (the stock) was sold to plaintiff to increase his interest in the business and spur him on to greater zeal in putting goods upon the market.

It is contended that this court has never held that contracts prohibited by section 6083 were void, except where the question was raised on behalf of the partnership association. If that be true, it signifies nothing. It certainly cannot be that a party to a contract, which is a *nudum pactum* because of the incapacity or failure of the other party to make the contract, can be bound by his naked promise.

This defendant was in a situation to raise this question in its own defense at any time. Nothing less than action amounting to a new contract in compliance with the statute could bind it. Therefore the plaintiff's right to treat it as void is in no way compromised by what has been done. What the rights of the parties may be as to the work performed by, and money paid to, the plaintiff are not involved in this case.

The judgment is reversed, and a new trial ordered.

MONTGOMERY, MOORE, and McALVAY, JJ., concurred.

OSTRANDER, J. (*concurring*). Plaintiff has declared

specially upon the written contracts which are set out in the opinion of Mr. Justice Hooker. He avers his purchase of shares of the capital stock of defendant and payment for the same, and his execution of the said contracts to have been induced by false and fraudulent representations "both as to said stock and as to said contract of hiring, all of which he relied upon," and that the contract for employment was the real consideration for his purchase of the stock. For breaches of contract he avers that, although plaintiff was always ready and willing to enter into and continue in defendant's employ, "on the terms aforesaid," and has performed the contract on his part and waited a reasonable time for defendant to perform, yet defendant has refused and failed to employ the plaintiff in the capacity and on the terms aforesaid, and has refused to pay him a salary of $125 a month and commissions, and has refused to appoint a successor to take over the said capital stock, and has refused to take said stock itself. The common counts in assumpsit are joined with the special count. There is nothing in the declaration to indicate or suggest rescission or disaffirmance of the contract of hiring. The special count proceeds entirely upon the theory of affirmance of the contract and the enforceability of the contract obligations. There is no testimony tending to prove any false or fraudulent representation of defendant. If any was introduced, it was stricken from the record on motion of counsel for plaintiff.

Defendant did not refuse or fail to perform the contract obligations. What it did do was to refuse to perform the contract of hiring in accordance with plaintiff's interpretation of said contract. Plaintiff's reading of the contract was not the correct reading. The contract before us and the one considered in *Haas* v. *Malto-Grapo Co.*, 148 Mich. 358 (111 N. W. 1059), cannot be distinguished. Plaintiff left the defendant's service and is the one chargeable with breach of the contract of hiring. It is clear therefore that plaintiff cannot recover under the special count.

I find in the record nothing tending to prove that when

plaintiff, in his letter to defendant of March 4, 1907, announced a rescission, and when later he began this suit, he had been advised or understood that the contracts set out in the declaration did not bind the defendant. On the contrary, he relied, as the letter clearly shows, upon alleged false representations and upon the nonperformance of the contract of hiring according to its terms as he interpreted and construed those terms. He demanded his unpaid salary and the money he had paid for his stock.

Both parties requested that a verdict be directed, and the court directed a verdict for defendant. Plaintiff requested the court to direct a verdict in his favor, because the contract of hiring was never binding on defendant, for which reason the consideration for the purchase of the stock of defendant failed. This request and the ruling thereon raises the sole point for our consideration. Clearly, this request was preferred upon the theory of a disaffirmance of the contract of hiring—upon the theory that the consideration for the money paid for the stock had failed. The testimony for plaintiff tends to prove that for the money which he paid for the stock, and which defendant received and appropriated, he was to receive not only certificates of shares in defendant association, but, in addition thereto, he was to be hired by the defendant, which, in that behalf, was to execute with him a written, valid contract of hiring. In other words, the understanding was that he was to receive shares of stock and a promise of defendant which should bind defendant; the stock being purchased because the defendant made such purchase a condition to employment. The undertaking, so far as hiring plaintiff is concerned, was then wholly, and is now, by its terms, in part, executory. It did not, and does not, bind the defendant. *Rhoades* v. *Pure Food Co.*, 149 Mich. 235 (112 N. W. 940). The defendant exists by virtue of the statute. No method other than the statute method of contracting is authorized. The statute method was not followed, with the consequence that the association is not bound by the con-

tract of hiring or by the agreement to repurchase the stock, although the officer who executed them is bound. Both contracts were, however, such as it was within the power of the association to make, a consideration which distinguishes this case and *McCurdy* v. *County of Shiawassee*, 154 Mich. 550 (118 N. W. 625); and, as no rule of public policy is violated in refusing to permit defendant to retain money where the principal consideration it has given for it has wholly failed, none is violated in permitting a rescission and recovery as for money had and received.