ARMSTRONG *v.* STEARNS.

1. LIMITED PARTNERSHIPS—STATUTES GOVERNING—CONSTRUCTION.
   The law governing corporations, rather than that governing
   copartnerships, is applicable to a limited partnership organ-
   ized under chapter 160, 2 Comp. Laws. *Rouse, Hazard & Co.*
   v. *Detroit Cycle Co.*, 111 Mich. 251.

2. SAME—CONTRACTS—BILLS AND NOTES—HOLDERS IN DUE COURSE.
   Where one of the managers of a limited copartnership, organ-
   ized for the purpose of buying and selling merchandise, had,
   from its organization, been accustomed to make contracts
   and execute notes in excess of the limit of $500 fixed by 2
   Comp. Laws, § 6083, without express written authority from
   the majority of the members, but with the knowledge of the
   other managers and of some of the stockholders, the obliga-
   tions being paid without objection at maturity; similar un-
   paid notes in excess of $500 held by indorsees in due course,
   are valid claims against the association, as if originally au-
   thorized. *Citizens' Sav. Bank* v. *Vaughan,* 115 Mich. 156,
   distinguished.

3. BILLS AND NOTES—BONA FIDES—NEGLIGENCE.
   Bad faith, and not gross negligence alone, must be shown to
   deprive a holder in good faith for value, of his rights as such.

4. SAME—EVIDENCE OF BAD FAITH.
   Gross carelessness in such cases is merely evidence of bad faith.

5. SAME—ACCOMMODATION NOTES—USAGE—ESTOPPEL.
   Accommodation notes executed by one manager, without ex-
   press authority under such statutory provisions, through a
   long course of dealings known to the managers and others
   interested in the copartnership, are valid in the hands of pur-
   chasers in good faith, who may rely on the presumption that
   the necessary authority had been given.

Appeal from Ingham; Wiest, J. Submitted January
20, 1908. (Docket No. 45.) Reargued February 25,
1909. (Docket No. 92.) Decided May 26, 1909.

Petition by Arthur B. Armstrong and others against

Justus S. Stearns and others for the dissolution of the Central Implement Company, Limited, and the appointment of a receiver. The Detroit Trust Company was appointed receiver, and on its application certain claims of creditors were referred to a commissioner. From a decree confirming the award of the commissioner, the City National Bank appeals. Affirmed.

*Harry E. Hooker* (*T. Rogers Lyons*, of counsel), for appellant.

*E. C. Chapin*, for claimants First National Bank of Marquette and the American Appraisal Co.

*Bundy, Travis & Merrick* and *George A. Farr*, for claimant State Bank of Michigan.

*Aaron A. Ferris*, for claimant Field-Evans Iron Co.

*Cooley & Hewitt*, for claimants Welles and others.

*George A. Farr*, for claimant National Bank of Grand Haven.

*Stellwagen & MacKay*, for claimant Prouty & Glass Carriage Co.

*Seymour H. Person*, for claimant Cobe & McKinnon.

*Weadock & Weadock*, for claimant Wickes Bros.

*Charles F. Hammond*, for claimant Lansing State Savings Bank and others.

*Simmons, Mitchell & Irving*, for claimant London Machinery Co.

*Thomas, Cummins & Nichols*, in pro. per. and for the receiver.

BROOKE, J. The Central Implement Company, Limited, was organized in February, 1902, under chapter 160 of the Complied Laws of 1897, as amended, with a capital stock of $300,000, $200,000 of common and $100,-

000 of preferred stock.    It carried on the business of buying and selling agricultural implements at wholesale. The record shows that said association had a board of managers, and that Mr. A. B. Armstrong was treasurer of the association, and that the management and conduct of the business of the association, which was an association for the purpose of buying and selling merchandise, was practically in his hands; he being assisted from time to time by Mr. W. T. Webb and Mr. I. T. Hurd, both members of the board of managers, and perhaps by others. Mr. Hurd had, by resolution of the board, charge of affairs during Mr. Armstrong's absence.    Regular meetings of the board of managers were held from time to time, at which the affairs of the association were discussed and passed upon.

The evidence further shows:    That Mr. Armstrong, in his management of the affairs of the Central Implement Company, Limited, had for some time prior to its failure been purchasing merchandise from E. Bement's Sons, a manufacturing corporation of Lansing, Mich., which company went into the hands of a receiver on October 24, 1904.    That a large amount of the goods so purchased or contracted for had not at the time of the failure of E. Bement's Sons been delivered to said Central Implement Company.    Notes of the Central Implement Company, Limited, however, signed by Mr. Armstrong alone as its treasurer, or at his orders, were given to E. Bement's Sons from time to time and due at different dates, for the entire merchandise so contracted for, part of which notes were afterwards paid by said Central Implement Company.    The evidence shows that, shortly before the failure of E. Bement's Sons, an arrangement was entered into between Mr. A. O. Bement, president of the E. Bement's Sons, and Mr. Armstrong, treasurer of the Central Implement Company, Limited, whereby said Central Implement Company, Limited, should make and deliver to said E. Bement's Sons, or to North-Molitor Manufacturing Company, a trading name used by it, certain notes

for its accommodation, but without consideration, which arrangement was carried out, and notes to the amount of $22,000 were so made by the Central Implement Company, Limited, by Mr. Armstrong, its treasurer, alone, although with the knowledge and after discussion of the matter with other members of the board of managers, and delivered to E. Bement's Sons, or the North-Molitor Manufacturing Company, all of which notes, whether given for merchandise delivered or to be delivered or accommodation notes, were at once discounted by E. Bement's Sons for value with a large number of banks throughout the State; a small part of the proceeds, about $2,600, of the so-called "accommodation notes," being turned over by E. Bement's Sons to the Central Implement Company, Limited. On October 10, 1905, the Central Implement Company, Limited, having become insolvent, a bill was filed by a majority of its managers, in which proceeding they sought a dissolution. At that time there was outstanding paper of the class above described between $45,000 and $50,000, the original amount issued of over $50,000 having been reduced by payment from time to time by the Central Implement Company, Limited, up to the time it went into the hands of a receiver.

The evidence further shows that no one knows, nor can it be ascertained from the notes themselves or the books of the Central Implement Company, Limited (a large number of the notes being renewals), which of said notes were given for value and which are so-called "accommodation notes" for which no consideration passed. A receiver (the Detroit Trust Company) having been appointed, and it, being in doubt as to the legality of this paper and other contracts in so far as the obligation of the Central Implement Company, Limited, was concerned, petitioned the court that an order be made that certain claims of this nature listed under so-called "Schedule D" in its petition should be submitted to a commissioner, and that proofs be taken and their legality passed upon by said commissioner. The claim of the appellant, the City National

Bank, had been theretofore allowed by the court without question or comment. Upon the hearing before the commissioner the preferred stockholders of the Central Implement Company, Limited, by counsel, raised objection to this so-called "Bement paper" and other contracts of a similar character where the evidence of the claim was signed by one manager only and was in excess of $500. Later the objection to the allowance of these claims on the part of the stockholders was withdrawn, when the appellant insisted upon its right to raise the questions on its own behalf and on behalf of certain other creditors standing in the same relation to the fund as that occupied by it. The commissioner made a report allowing the claims of the various banks upon the so-called "Bement paper" and other claims evidenced by the obligations signed by Armstrong alone, and duly filed his report thereon. The appellant excepted to said report, which exceptions were overruled by the circuit judge, and the case is now here for the purpose of reviewing this ruling. After the first argument of the case in this court, it was remanded to the circuit court for the purpose of taking testimony touching the date of the insolvency of the Central Implement Company, Limited, and to ascertain in what manner and at what time the demand of the appellant, the City National Bank, originated, and in what form it was originally and has since been evidenced. That supplemental record is now before us.

The section of the statute relied upon by the appellant is as follows:

"No debt shall be contracted nor liability incurred for said association except by one or more of said managers, and no liability for an amount exceeding five hundred dollars, except against the person incurring it, shall bind the said association unless reduced to writing and signed by at least two managers, except in case of associations for the purpose of buying and selling merchandise, a majority of the interest in such association may select one of the managers each year to purchase merchandise required in the business of the association, make contracts,

and sign notes for the same: *Provided*, Such power given in writing fully setting forth the extent to which such manager may make purchases and contract debt for the association, which shall be signed by a majority of the members in number and value of their interest, and such power of purchasing and contracting debts shall be strictly limited to the ordinary business of the association." 2 Comp. Laws, § 6083.

Appellant urges that, inasmuch as all of the Bement paper, so-called, was signed by Armstrong alone, and inasmuch as many of the contracts for purchase of goods from other parties were signed by Armstrong alone, even conceding the bona fides of the present holders of this paper, and whether it represents goods furnished to the defunct company or money advanced to it, the paper is absolutely void, citing *Citizens' Sav. Bank* v. *Vaughan*, 115 Mich. 156. It is the appellant's attitude that it makes no difference whether the holders of this paper in good faith parted with their money or property for the same to the defunct company, or, on the other hand, whether the defunct company received no consideration for the paper. According to its contention it is all not merely voidable but void, and, being void, it is further its contention that it could not, by any act of the officers of the defunct partnership association, have been validated. In view of the contention made, it becomes important to examine carefully the decision in the case of *Citizens' Sav. Bank* v. *Vaughan*, supra. In that case the Michigan Mortgage Company, a copartnership limited, was organized for the purpose of dealing in mortgage securities, etc., and had in its dealings accepted two notes, and had indorsed the same in the name of the company by the signature of one of its managers only, and had discounted them with the plaintiff bank, receiving the money thereon. The action was to recover from the indorsers who had sold the paper which the bank then held, and not from the makers who were primarily liable on the same. Under no circumstances, the copartnership limited not

having been organized for the purpose of buying and sell-
ing merchandise, could the notes there before the court,
signed by one manager only, have been validated, under
the statute. Section 6083, supra. They were void upon
their face. A part of such section 6083, however, reads
as follows:

"Except in case of associations for the purpose of buy-
ing and selling merchandise, a majority of the interest in
such association may select one of the managers each
year to purchase merchandise required in the business of
the association, make contracts and sign notes for the
same. *Provided*, Such power given in writing fully set-
ting forth the extent to which such manager may make
purchases and contract debt for the association, which
shall be signed by a majority of the members in number
and value of their interest, and such power of purchasing
and contracting debts shall be strictly limited to the ordi-
nary business of the association."

As pointed out above, the Central Implement Company,
Limited, was organized for the purpose of buying, selling,
and dealing in merchandise, and did do a very large
merchandising business, and as such was authorized by the
method pointed out in the statute under which it was
organized, just quoted, to select one of its managers to
purchase merchandise required in the business of the as-
sociation, make contracts, and sign notes for the same,
even in excess of $500. No such authority was ever given
to Mr. Armstrong or anyone in the manner pointed out
by the statute. The question arises then: Would the
fact that such authority might have been given, although
in fact it was not, make the notes in question invalid in
the hands of a bona fide purchaser for value? The
record shows that, during the entire life of the association,
a period of some three years and a half, Mr. Armstrong
was permitted by his fellow managers and associates in
the enterprise to exercise the authority which the statute
says might be exercised by one manager, in the manner
pointed out therein. He had authority to execute this
paper and sign it by his name alone, if authorized to

do so by the association. During the period from February, 1902, to October, 1905, literally hundreds of notes such as those in question were made by Mr. Armstrong or under his direction, signed by one manager only. Contracts other than notes for amounts exceeding $500 in value for the purchase of goods were habitually made by Mr. Armstrong acting alone. During all this period the notes given in settlement for the purchases so made, until the insolvency of the implement company, were paid and acknowledged by the association; and it appears that all of the managers of the association were aware of this course of dealing, and at least part of the stockholders likewise had knowledge that this was the course of business. Under these circumstances, had the good-faith purchaser of the paper in question, whether he acquired it by parting with money or goods therefor, the right to assume from the long course of dealing above pointed out, without objection from anyone to the public, that the authority, which under the statute might have been given to Mr. Armstrong to make such paper, had in fact been given?

It is well to premise this discussion by the statement that this court has determined that the law governing corporations, rather than the law governing copartnerships, is applicable to a partnership limited such as the insolvent implement company was. *Rouse, Hazard & Co.* v. *Detroit Cycle Co.*, 111 Mich. 251 (38 L. R. A. 794); *Staver & Abbott Manfg. Co.* v. *Blake*, 111 Mich. 282-289 (38 L. R. A. 798).

"Actual mala fides must be shown to the satisfaction of the jury to deprive a holder for value of the character of bona fide holder, and negligence in not inquiring into facts which ought to have put him on inquiry is not sufficient. Gross carelessness, even on the part of the holder, is not conclusive of notice, though it is, of course, perfectly competent evidence to go to the jury on the question of bad faith. So that in case of bills and notes the purchaser for value is not bound, at his peril, to be on the alert for circumstances which might possibly excite

the suspicions of a wary, vigilant man. He does not owe to the party who put negotiable paper afloat the duty of active inquiry to avert the imputation of bad faith, and the speculative issue of his diligence or negligence does not enter into the question. The question is one simply of good faith in the purchaser; and, unless the evidence makes out a case upon which the jury would be authorized to find fraud or bad faith in the purchaser, it is the duty of the court to direct a verdict for the holder." Norton on Bills and Notes (3d Ed.), p. 320.

"It has been held that, where the charter prescribes that corporate contracts shall be signed by certain officers, a contract that is signed by only a part of them is not enforceable, even in bona fide hands. But the harshness and the inconvenience of this rule have caused it to be widely departed from and practically abandoned. Acts done by a corporation, which presuppose the existence of other acts to make them legally operative, are presumptive proofs of the latter. A mortgagee is not bound to inquire into the observance of the rules and regulations of the company relative to the call of meetings. Where the seal of the company has been affixed to a mortgage by the secretary, the mortgagee need not inquire whether a quorum of the directors was present at the meeting and authorized the mortgage, nor whether the secretary was duly authorized to affix the seal; the court upholding the mortgage, although a quorum was not present when it was authorized. * * * The Supreme Court of the United States lays down the rule as follows:

"'One who takes from a railroad or business corporation, in good faith and without actual notice of any inherent defect, a negotiable obligation issued by order of the board of directors, signed by the president and secretary in the name and under the seal of the corporation, and disclosing upon its face no want of authority, has the right to assume its validity, if the corporation could, by any action of its officers or stockholders, or both, have authorized the execution and issue of the obligation.' *Louisville, etc., R. Co.* v. *Trust Co.*, 174 U. S. 552, 573."

3 Cook on Corporations (6th Ed.), § 725.

"A bona fide purchaser of paper assets formerly owned by a corporation and indorsed by the proper officers thereof, may assume that the indorsement was duly authorized, and is not bound to search the corporation books for such

authority before completing his purchase." *Walker* v. *Railway Co.*, 47 Mich. 338.

"Negotiable paper of a corporation is valid in the hands of a bona fide holder, if it appears on its face to have been duly issued by the corporation in conformity to the provisions of its charter. If the corporation has power under any circumstances to issue such paper, a bona fide holder has the right to presume, although it may be that the note was unauthorized for the purpose for which it was made, that it was issued under the circumstances which gave authority." *Genesee County Sav. Bank* v. *Barge Co.*, 52 Mich. 164, 438.

"If the contract can be valid under any circumstances, an innocent party in such a case has a right to presume their existence, and the corporation is estopped to deny them." *Merchants' Bank* v. *State Bank*, 10 Wall. 604.

"Contracts of a corporation which are not contrary to the express provisions of its charter are presumed to be within its powers." *Gorder* v. *Canning Co.*, 36 Neb. 548.

See, also, *McLellan* v. *Detroit File Works*, 56 Mich. 579.

"The guaranty by the railroad company of the bonds was not ultra vires in the sense of being outside of the corporate powers of the former company, for the statute of 1883 expressly authorized such a company to execute such a guaranty, and its board of directors to direct its execution by the company. The statute indeed made it a prerequisite to the action of the board of directors that it should be upon the petition of a majority of the stockholders, but this was only a regulation of the mode and the agents by which the corporation should exercise the power granted to it. The distinction between the doing by a corporation of an act beyond the scope of the powers granted to it by law, on the one side, and an irregularity in the exercise of the granted powers, on the other, is well established, and has been constantly recognized by this court. * * * One who takes from a railroad or business corporation, in good faith, and without actual notice of any inherent defect, a negotiable obligation issued by order of the board of directors, signed by the president and secretary in the name and under the seal of the corporation, and disclosing upon its face no want of authority, has the right to assume its validity, if the corporation

could, by any action of its officers or stockholders, or of both, have authorized the execution and issue of the obligation." *Louisville, etc., R. Co.* v. *Trust Co.*, 174 U. S. 552.

" The directors intrusted the entire management of the bank to the cashier, Mr. Bradley, and therefore neither the bank nor its receiver can now be heard to deny the authority of the cashier to do any of those acts which it or its directors might lawfully authorize the cashier to do. * * * In such case the authority of the cashier would be presumed when the paper is in the hands of a bona fide holder for value without notice of any defect in his authority." *Davenport* v. *Stone*, 104 Mich. 521.

" While the secretary of a corporation has not, merely by virtue of his office, authority to negotiate notes held by the corporation, it is well settled that if such an officer has been permitted by the directors to negotiate notes, or if the company acquiesce in and receive the benefits of such acts, a purchaser of a particular note, familiar with such facts, may assume the officer's authority, and the corporation will not be permitted to set up want of authority against such purchaser." *Commercial Nat. Bank* v. *Brill*, 37 Neb. 626.

See, also, *County of Gloucester Bank* v. *Colliery Co.*, L. R. 58 Chan. Div. 633 (1895); *Biggerstaff* v. *Rowatt's Wharf*, L. R. 61 Chan. Div. 93 (1896); Mechem on Agency, § 84.

The contention is made that, a part of this paper being accommodation paper, no consideration having passed to the Central Implement Company, Limited, from E. Bement's Sons for the same, no recovery can be had thereon. It has been pointed out, however, that the accommodation paper was treated by the association exactly as was the paper given for value. It was recognized from time to time, renewed, and in part paid by the maker, and no question is raised as to the fact that the present holders thereof purchased the same in good faith and without notice of lack of consideration therefor. Under those circumstances, we are of opinion that the failure of consideration as to part of this paper cannot be urged against

its validity. See *Thatcher* v. *West River Nat. Bank*, 19 Mich. 196; *Polhemus* v. *Ann Arbor Sav. Bank*, 27 Mich. 44; *Cristy* v. *Campau*, 107 Mich. 172; *Monument Nat. Bank* v. *Globe Works*, 101 Mass. 57; *Bird* v. *Daggett*, 97 Mass. 494.

A careful review of all the authorities (and the case has been fully briefed by all the parties in interest) leads us to the conclusion that not only the notes given for the merchandise in excess of $500, but likewise the notes given as accommodation paper, are valid obligations of the defunct partnership association, limited, in the hands of their present bona fide holders. It should not be overlooked that it is the appellant's contention that this paper was absolutely prohibited by section 6083, above quoted, and further that it bore upon its face evidence of its infirmity, in that it was signed by one manager only. We are of the opinion that neither position is well taken. The exception in section 6083, above quoted, distinctly authorized the making of such paper under certain conditions, and we think the long course of dealing of the association through Mr. Armstrong with the public, without protest from the other managers or stockholders, and with the knowledge of the managers, was sufficient to lead those who dealt with the implement company to believe that the necessary statutory authority had been given. Indeed, it is apparent from the supplemental record that the appellant itself from February, 1903, to April, 1905, held as evidence of its claim a note signed by one manager alone.

Having reached the foregoing conclusions, it is unnecessary to determine whether or not the appellant can prosecute on its own behalf as a creditor. We think that the proper course for a creditor to pursue in such a case is to move the court for an order directing the receiver to contest the allowance of the alleged illegal claims.

Inasmuch as the receiver apparently of its own motion instituted the inquiry as to the validity of the various claims presented, the costs of appeal, including the print-

ing of the briefs of all claimants, will be paid from the fund in the hands of the receiver.

The order appealed·from is affirmed, and the record remanded.

BLAIR, C. J., and GRANT, OSTRANDER, and MOORE, JJ., concurred.