GEEL *v.* GOULDEN.

VENDOR AND PURCHASER—NOTICE—CONTRACTS.
Knowledge of the fact that a land contract was never signed by the vendee will be imputed to the vendors of land who held in their possession one of the original written instruments that were prepared in duplicate, for a period of several years, accepting numerous payments on the instrument.

2. SAME—PRINCIPAL AND AGENT—IMPUTED KNOWLEDGE.

And when a real estate broker, acting for the vendors, knew that the instrument was drafted with the name of an officer as grantee of the defendant, a partnership association, and that the officer had no personal interest in the deal, and that he assigned the contract to the association immediately thereafter; the broker being an agent of complainants, they were chargeable with the knowledge that he had.

3. SAME—ESTOPPEL.

As to such defendant assignor, complainants' bill to foreclose the land contract was properly dismissed.

4. PARTNERSHIP ASSOCIATIONS — LIMITED LIABILITY — STATUTES — DEBTOR AND CREDITOR—OFFICERS AND AGENTS.

A single manager or agent of a limited partnership association cannot by a contract in its name render the association liable in an amount exceeding $500. 2 Comp. Laws, § 6083.

5. SAME—LAND CONTRACT—MUTUALITY.

Under a land contract, conveying to an officer of a partnership association real property that thereafter he assigned to the association, which surveyed and platted it, paying taxes on the premises and installments on the contract, the partnership was not bound unless the contract was signed and executed by two managers as required by statute.

6. SAME—ESTOPPEL.

In the light of the express prohibition of the statute, the association was not bound by estoppel to pay the contract debt, and could, at any time, invoke the aid of the statute to avoid liability.

7. SAME—AFFIRMATIVE RELIEF.

But the partnership association is estopped in equity from attempting to recover back any of the consideration paid voluntarily to the vendor, and its cross-bill is dismissed.

Appeal from St. Clair; Tappan, J. Submitted November 22, 1911. (Docket No. 170.) Decided February 10, 1912.

Bill by Amanda J. Geel and others against Theophilus A. Goulden, the Factory Land Company, Limited, and Charles Wellman, trustee, to foreclose a land contract. The Factory Land Company, Limited, by cross-bill, prayed for affirmative relief. From a decree for com-

plainants against defendant the Factory Land Company, and for the other defendants dismissing the complainants' bill, defendant the Factory Land Company appeals. Reversed and bill and cross-bill dismissed.

*Thomas Wellman,* for complainants.

*W. L. Jenks,* for defendants.

STEERE, J.   The bill of complaint was filed in this suit by complainants for the purpose of foreclosing a certain land contract, dated October 22, 1902, for the sale of a tract of land, described by metes and bounds, located in the southern portion of the city of Port Huron, St. Clair county, Mich.

The contract purports to sell the land to T. A. Goulden, and is signed by the vendors only, who are the complainants herein.   The consideration stated is $5,000, to be paid as follows:

"$1,000 down on the signing of this contract, and the balance on or before five years, with the privilege of paying $1,000 or more, at any time, on the principal of this contract, interest to cease on amount so paid at time of payment, with interest on all sums at any time unpaid hereon, at the rate of six per cent. per annum payable annually."

The purchaser is required to pay all taxes, ordinary and extraordinary, assessed against the land, and is to have immediate possession.   The contract also contains the usual covenant to deed and forfeiture clauses.   It was made in duplicate.   On the original retained by complainants is the following indorsement:

"For value received I hereby assign the within contract to the Factory Land Company, Ltd.

"T. A. GOULDEN.

"Port Huron, Oct. 31, 1902."

In complainants' prayer for relief, they ask for an accounting, make tender of deed upon payment of amount adjudicated, and in default thereof ask for decree of fore-

closure and sale in the usual manner; and, further, that, in case of sale, should said land fail to produce a sufficient sum to pay the amount found due, said defendants shall be adjudged personally liable for the deficiency, and complainants have execution therefor.

The Factory Land Company, answering, alleges that, although its secretary caused the assignment of October 31, 1902, to be prepared, and requested defendant Goulden to sign the same, no consideration was paid him therefor, and no legal obligation was incurred thereby. It further alleges that the money paid to complainants on the alleged land contract was paid by the secretary, without consideration, and in violation of law, and prays that its answer be considered in the nature of a cross-bill, under which it seeks to recover the amount of money thus unlawfully paid complainants, asking a decree in its favor for the same.

Defendant Goulden, answering separately, denies that he was a party to the contract in question; denies that he ever entered into occupation or possession of the land mentioned therein; alleges that he has no interest whatever in said land, or in the contract therefor, and avers that no consideration ever passed from him to complainants, or to him from the land company for his assginment; denies that the other defendants can have any right or interest in the land through or under him; alleges that he executed the assignment indorsed upon the contract at the request of the Factory Land Company, with no other or further interest in the transaction.

Defendant Wellman, trustee of the land company, denies any interest of any kind in the premises described, and prays that the bill be dismissed as to him.

The testimony discloses that E. F. Percival, a real estate agent of Port Huron, was authorized by complainants to act as their agent in dealing with the purchaser for this property, and so acted as their agent and representative. He negotiated the deal with E. L. Moak, who was secretary and one of the executive officers of the de-

fendant Factory Land Company, a partnership association, limited, organized under chapter 160, 2 Comp. Laws, "for the purpose of purchasing, improving and selling of land, encouraging manufacturing, building and renting houses, warehouses, docks, factories and stationary ship machinery."

Moak, as secretary, had active management of the company's affairs, making purchases, sales, and collections for it. He bought a great deal of property for the company, under contract, having in fact, as he states, charge of practically all the work and making of contracts with different individuals. He testifies:

"I have authority sufficient to appropriate the money of the company to purchase land, and have general authority in that direction."

Several members of the land company, including Moak, became interested in, and desirous of, purchasing the property in question for the company, and decided to do so. Satisfactory terms having been reached by Percival and Moak, each representing his respective principal, the contract under consideration was prepared. At the instance of Moak, and because, as he testifies, it was thought advantageous to the plans of the company, T. A. Goulden, treasurer and one of the executive officers of the company, was named as vendee. He was not a party to any of the negotiations, and first learned of the transaction, and use of his name in that connection, just before the papers were drawn up, at which time it was brought to his attention by Moak and Percival, who informed him that the land was being bought for the company, and it was deemed advisable to take the title in his name.

On the day the contract was executed by complainants, Goulden, at the request of Moak, executed the assignment indorsed on the original contract, which was delivered to complainants, and subsequently he made a similar indorsement on the original copy retained by the company, for the purpose of completing its record of the transaction.

His indorsement was without consideration, and simply made at the suggestion and request of Moak.

On October 31, 1902, Percival receipted to the land company, in behalf of complainants, for $500. Indorsements on the contract show the payment, on December 12, 1902, of $500 more, making the $1,000 to be paid down on the execution of the contract. Further indorsements show the annual payment of interest, amounting to $240 each year, up to and including November 4, 1907, making a total of $2,201 paid complainants. Moak testifies that he made these payments out of the funds of the company, and also, from the same source, paid $758.37 in taxes; that he drew the money for the purchase of the property from the funds of the Factory Land Company, drawing checks on the treasurer, who was Mr. Goulden; the checks being drawn so that they could be cashed at the bank.

The duplicate contract prepared for the vendee was taken by Moak and kept among other papers of the company in its office. Entries of the payments to complainants were made in the books of the company, which were open to the inspection of the directors and stockholders. Moak presented and filed, at the annual meeting of the company of that year, a statement, showing the payment of this $1,000 on the contract. The annual meeting was held in August, 1903, so that the directors had opportunity to know how much money was invested in the property at that time. The property was carried upon the books of the company, and known as the Geel property. The company had possession of the property, from the time of its purchase, to the extent that it controlled and exercised the same dominion over it ordinarily exercised by owners over land in like condition; it being vacant and unfenced. It was surveyed by the company, though no stakes were driven; a plat was made of the lands of the company in that locality, known as the Buena Vista plat, including this property with contiguous land purchased from other sources.

Neither duplicate of the prepared contract was signed by any one as purchaser or vendee. Complainants, dur-

ing all the intervening years, were in possession of one of the originals, and cannot plead ignorance of this palpable imperfection. Knowledge of the legal rights and responsibilities of both parties, under such conditions, is imputed to them.

It is claimed in their behalf that the doctrines of part performance and estoppel relieve this contract from the statute of frauds, and preclude defendants from denying its validity.

It is charged that defendant Wellman, as a trustee of the land company, claims some right or interest in the premises. This is denied by him, and there is no evidence of any kind tending to show that he ever made such claim, or in any manner became personally a party to, or participated in, the transaction.

Defendant Goulden's name appears on each of the duplicates, under an indorsement assigning the same to the land company. It is claimed that this, in legal effect, is equivalent to signing and accepting the contract, and makes him personally liable according to its terms. So far as these indorsements speak for themselves, they indicate a transaction between him and the land company, not between him and complainants. Percival, who was complainants' agent, participated in and had full knowledge of all the facts and circumstances attending this assignment. He knew Goulden took no part in the negotiations, was not personally interested in them, was not the purchaser, and knew nothing of the matter, until the terms had been agreed upon between Percival and Moak for the sale of the premises by complainants to the land company. He knew Goulden paid nothing for the contract, and received nothing in payment for his assignment, only signing the same as an accommodation, at the request of Moak, with the approval of Percival, for some purpose Moak considered in the interest of the company, which was known to be the actual purchaser.

No question of undisclosed principal is involved. Percival's knowledge was complainants' knowledge. They

cannot claim to have been deceived or misled by things done with his knowledge and consent.

Between complainants and defendants Goulden and Wellman, the testimony discloses no facts at the time of the negotiations, and no subsequent conduct, under which the elements of mutuality essential to a contract are discernible, or under which the doctrine of estoppel can be invoked. As to those two defendants, the bill of complaint was properly dismissed.

Between complainants and the defendant land company, an entirely different situation presents itself. It is urged with much reason that the land company, by reason of having, through its agent, negotiated to purchase the property, accepted and retained a contract, signed by the vendors, made payments on said contract, surveyed, platted, and paid taxes on the premises, has established the elements of mutuality which make the agreement valid and binding on both parties, and is estopped from denial, under the ruling in *Mull* v. *Smith*, 132 Mich. 618 (94 N. W. 183). Were the defendant company a natural person, with unlimited power to contract, we think the authority cited would be controlling. The Factory Land Company is an artificial person, with its powers and duties limited and prescribed by statute. In its behalf, the contention is made that part performance and estoppel cannot be invoked against it in the face of a positive statutory prohibition.

The statute relied on, and under which the company is organized, provides, in part, as follows:

" No debt shall be contracted nor liability incurred for said association except by one or more of said managers, and no liability for an amount exceeding five hundred dollars, except against the person incurring it, shall bind the said association unless reduced to writing and signed by at least two managers, except in case of associations for the purpose of buying and selling merchandise," one manager may be authorized to make contracts and sign notes for the same. [§ 6083, 2 Comp. Laws.]

It is well settled by previous decisions of this court that a single agent or manager of a partnership association, limited, organized under said statute, cannot, by a contract in its name, make it liable in an amount exceeding $500; and that the statute may be interposed as a defense in any suit brought to enforce such contract. *Citizens' Sav. Bank* v. *Vaughan,* 115 Mich. 156 (73 N. W. 801); *Rhoades* v. *Pure Food Co.,* 149 Mich. 235 (112 N. W. 940); *Hoyt* v. *Grape Juice Co.,* 158 Mich. 619 (123 N. W. 529); *Beach* v. *Publishing Co.,* 163 Mich. 226 (128 N. W. 177); *Armstrong* v. *Stearns,* 156 Mich. 597 (121 N. W. 312).

In *Citizens' Sav. Bank* v. *Vaughan, supra,* indorsements of the association on notes of over $500 each, apparently made in the usual course of business by one of its officers, were involved. It was said:

"Undoubtedly both parties acted in ignorance of this statute; but the statute must control.   *   *   *   We think the statute contemplates that the invalidity should attach to every contract in its entirety, where the amount exceeds $500."

In *Rhoades* v. *Pure Food Co., supra,* in a suit for services rendered under a contract for hiring at an annual salary of $2,000 per year, it was held plaintiff could not recover, because the contract was not signed by at least two managers of the defendant.

*Hoyt* v. *Grape Juice Co., supra,* was a suit to recover under a contract of employment for over $500, signed by only one manager of the defendant. It was said:

"This contract was a nullity in its entirety, and it was no more binding upon the plaintiff than the defendant, upon the familiar principle that there was a want of mutuality   *   *   *   This defendant was in a situation to raise this question in its own defense at any time."

In *Beach* v. *Publishing Co., supra,* the defendant being engaged in general publishing, book selling, and office supplies, it was held that:

"Power conferred upon the general manager by the association to make contracts involving more than $500 must be limited to *merchandise contracts*. The contract in the case before us is one of hiring, and must be declared void under the statute."

In *Armstrong* v. *Stearns, supra,* it was held that under the exception in the statute, not only notes given for merchandise in excess of $500, but also notes given as accommodation paper, were valid obligations in the hands of bona fide holders against a partnership association, limited, whose business was buying and selling merchandise.

The case of *Howard* v. *Land Co.,* 167 Mich. 251 (131 N. W. 113), is cited by complainants in support of the contention that, in a proper case, such a contract will be sustained, though not executed as the statute requires. In that case the principles of previous cases are recognized and applied. Though the name of but one manager of the company appeared on the contract, it was held to be, in legal effect, signed by two or more, and the requirements of the statute complied with; the records of the company showing that at a meeting, duly held, all the managers and directors of the company, by proper resolution, voted to make the purchase and close the contract. It was the action of the board, preserved in the records of the company, which legalized the contract, not part performance.

We think, in the light of previous decisions applied to the practically undisputed facts in this case, the defendant land company could invoke the statute at any time as a defense against proceedings to enforce further liability and further performance.

By its cross-bill, the Factory Land Company seeks to recover the money paid on the purchase price and for taxes on the land, with interest, on the ground that the contract was void and the payments without consideration. While the doctrines of part performance and estoppel *in pais* will not render valid and aid complainants in enforc-

ing an executory contract made in direct violation of a prohibitory statute, a different question is presented when a defendant asks a court of equity to undo that already done, and compel return of money voluntarily paid. It is to be borne in mind that this contract was not *ultra vires.* It was not fundamentally void of necessity, because outside the object for which the company was created. The company was organized to deal in real estate. It was within its power to accept and ratify this tentative contract of its agent and, at any time before complainants served notice to the contrary, make it valid by executing it according to the statute. It did not see fit to do so; but, quieting these complainants by these payments, from time to time, it kept control of the property, holding this unilateral contract as a symbol of ownership, in effect an option, awaiting the advent of fortuitous circumstances, if they came, and in position to throw up the project, if it proved unprofitable. The contract not being *ultra vires,* no question of public policy is involved, and we think the equitable doctrine of estoppel *in pais* can well be applied to such a state of facts.

Complainants' bill and defendants' cross-bill will be dismissed, without costs to either party.

McALVAY, BROOKE, BLAIR, and STONE, JJ., concurred.