*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KICKHAM HANLEY PLLC,

　　　　　Plaintiff-Appellant,

v

OAKLAND COUNTY MICHIGAN,

　　　　　Defendant,

and

GEORGE W. KUHN DRAINAGE DISTRICT,

　　　　　Defendant-Appellee.

UNPUBLISHED
May 2, 2019

No. 341076
Oakland Circuit Court
LC No. 2017-159351-CZ

Before: MURRAY, C.J., and SAWYER and REDFORD, JJ.

PER CURIAM.

Plaintiff, Kickham Hanley PLLC, appeals as of right the trial court's order granting summary disposition of its claims under MCR 2.116(C)(7) and (8) and denying its motion for leave to amend its complaint. We affirm.

## I. BACKGROUND

Plaintiff commenced this action against defendants[1] after the settlement of a class action lawsuit brought by a water and sewer ratepayer against Royal Oak, Michigan. The class representative alleged Headlee Amendment violations, Const 1963, art 9, § 31, and challenged Royal Oak's mandatory debt service charge and mandatory stormwater disposal charge to users of its water and sanitary disposal services. The circuit court in that action dismissed both counts of the complaint and the class representative moved for reconsideration. While that motion

---

[1] The trial court dismissed Oakland County based upon a stipulation of the parties.

pended, the parties settled. The circuit court approved the settlement and entered a final judgment.

During the class action litigation, the class representative came to believe that defendant, the George W. Kuhn Drainage District (GWKDD), inflated Detroit Water and Sewerage Department (DWSD) charges for stormwater disposal and overcharged for several years Royal Oak which passed on the charges to users. As part of the settlement in the class action lawsuit, Royal Oak paid a settlement to the class and assigned any claims it may have had for refund of the overcharges to plaintiff, as the trustee for a litigation trust. In its assignment, Royal Oak made no warranty or representation that it, in fact, imposed any overcharges or that any refunds were owed. The class members in turn released Royal Oak from any and all claims they had against Royal Oak concerning the city's rates and charges. The circuit court entered a final judgment and order approving the settlement and appointing plaintiff as the trustee of a litigation trust established for the benefit of the class members. The order authorized plaintiff to pursue a claim for refund of the GWKDD's alleged overcharges and ordered that any monetary recovery be distributed to the class members.

In its complaint, plaintiff alleged that Royal Oak's combined sewer system flows through the George W. Kuhn Drain, which is owned and maintained by Oakland County. The GWKDD is a component unit of Oakland County, comprised of several municipalities in the area, including Royal Oak, whose stormwater and sewerage flow into the Kuhn Drain. The GWKDD's stormwater flow is conveyed for ultimate disposal by Oakland County to a treatment plant operated by DWSD or the Great Lakes Water Authority (GLWA) for ultimate disposal. The DWSD charges the GWKDD a flat annual rate for stormwater disposal based on a formula tied to the amount of rainfall and the volume of surface water that enters the county's system for disposal. The GWKDD, in turn, proportionately allocates DWSD's stormwater charges among the municipalities in the district and charges each municipality that has a combined sewer system, including Royal Oak, a flat rate per month for stormwater disposal based on an apportionment formula stated in a resolution approved and adopted by the Drainage Board for the George W. Kuhn Drain at a public meeting held on April 19, 2005, and specified in the Drainage Board's Final Order of Apportionment issued April 19, 2005, pursuant to the board's resolution. The Final Order of Apportionment provided for the apportionment of the costs of administration, operations, and maintenance of the George W. Kuhn Drain. The Drainage Board allocated 29.7915% of the costs to Royal Oak.

Royal Oak, in turn, passed through the charges imposed by the GWKDD to its ratepayers by incorporating the charges into its water and sewer rates to recover the entire amount of the GWKDD's charge. The Drainage Board's Final Order of Apportionment provided that the charges to the municipalities, including Royal Oak, were comprised of two components: (1) the DWSD's charges to the George W. Kuhn Drain to treat the total stormwater flow and (2) the administrative costs of operating and maintaining the balance of the George W. Kuhn Drain System.

Plaintiff, as Royal Oak's assignee, filed a two count complaint against Oakland County and the GWKDD alleging a breach of contract claim and an equitable claim in assumpsit for money had and received. Plaintiff alleged that the GWKDD charged Royal Oak in excess of the amount DWSD charged for disposal of the stormwater and that the Drainage Board's resolution

contractually obligated the GWKDD to charge Royal Oak only its proportionate share of the DWSD's actual charges to the GWKDD. Plaintiff claimed that, by overcharging Royal Oak, the GWKDD breached the contract causing Royal Oak breach of contract damages. Alternatively, plaintiff alleged that, if no express contract existed, based on Royal Oak's assignment of its claims, plaintiff had entitlement to recover the GWKDD's overcharges through an action in assumpsit. The GWKDD, in lieu of filing an answer, moved for summary disposition under MCR 2.116(C)(7) and (8). The GWKDD asserted that the Drainage Board's resolution that formed the basis of plaintiff's breach of contract claim did not constitute a contract. The GWKDD also asserted that plaintiff's claims in actuality alleged tort liability from which the GWKDD had governmental immunity. Regarding the assumpsit count, the GWKDD asserted that plaintiff stood in the shoes of Royal Oak as its assignee and had no right to any damages from the alleged overcharges because the city passed through the overcharges to the ratepayers and suffered no compensable loss.

While the GWKDD's summary disposition motion pended, plaintiff filed an amended complaint that added an unjust enrichment claim. Defendant moved to strike plaintiff's amended complaint and the trial court granted the motion prompting plaintiff to file a motion for leave to amend. At the conclusion of a hearing on the parties' motions, the trial court granted defendant's motion for summary disposition under MCR 2.116(C)(8), denied plaintiff's motion for leave to amend, and dismissed plaintiff's lawsuit with prejudice.

## II. SUMMARY DISPOSITION UNDER MCR 2.116(C)(8)

### A. STANDARD OF REVIEW

We review de novo the trial court's grant of summary disposition under MCR 2.116(C)(8) to determine whether the opposing party failed to state a claim upon which relief can be granted. *Dalley v Dykema Gossett, PLLC*, 287 Mich App 296, 304; 788 NW2d 679 (2010). In *Dalley*, this Court explained:

> A motion brought under subrule (C)(8) tests the legal sufficiency of the complaint solely on the basis of the pleadings. When deciding a motion under (C)(8), this Court accepts all well-pleaded factual allegations as true and construes them in the light most favorable to the moving party. A party may not support a motion under subrule (C)(8) with documentary evidence such as affidavits, depositions, or admissions. Summary disposition on the basis of subrule (C)(8) should be granted only when the claim is so clearly unenforceable as a matter of law that no factual development could possibly justify a right of recovery. [*Id*. at 304-305 (quotation marks and citations omitted).

In a contract action the trial court may examine the contract attached to the complaint. *Liggett Restaurant Group, Inc v Pontiac*, 260 Mich App 127, 133; 676 NW2d 633 (2003). "The existence and interpretation of a contract are questions of law reviewed de novo." *Kloian v Domino's Pizza, LLC*, 273 Mich App 449, 452; 733 NW2d 766 (2006). Further, whether an equitable claim can be maintained presents a question of law subject to de novo review. *Morris Pumps v Centerline Piping, Inc*, 273 Mich App 187, 193; 729 NW2d 898 (2006).

B. BREACH OF CONTRACT

Plaintiff first claims that the trial court erred by granting summary disposition of its breach of contract claim. We disagree.

The party claiming a breach of contract must establish by a preponderance of the evidence (1) the existence of a contract, (2) the other party's breach, and (3) damages to the party claiming breach. *Miller-Davis Co v Ahrens Constr, Inc*, 495 Mich 161, 178; 848 NW2d 95 (2014). An express contract is "an actual agreement of the parties, the terms of which are openly uttered or declared at the time of making it, being stated in distinct and explicit language either orally or in writing." *Benson v Dep't of Mgt and Budget*, 168 Mich App 302, 307; 424 NW2d 40 (1988) (quotation marks and citation omitted). In *AFT Mich v Michigan*, 497 Mich 197, 235; 866 NW2d 782 (2015), our Supreme Court summarized the principles of contract formation as follows:

> A valid contract requires five elements: (1) parties competent to contract, (2) a proper subject matter, (3) legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation. The party seeking to enforce a contract bears the burden of proving that the contract exists. Contracts necessarily contain promises: a contract may consist of a mutual exchange of promises, or the performance of a service in exchange for a promise. [Citations omitted.]

Further, to create a contract, there must be an offer and acceptance by the parties signifying their unambiguous mutual assent or meeting of the minds on the essential terms. *Kloian*, 273 Mich App at 452-253 (citations omitted).

In this case, plaintiff alleged one count of breach of contract based on the resolution adopted by the Drainage Board. It argued to the trial court that the resolution coupled with the Drainage Board's Final Order of Apportionment constituted an express contract that the GWKDD breached. The record reflects that plaintiff attached the resolution and the Final Order of Apportionment to its complaint as exhibits making them part of its pleadings and relied on those documents to allege the existence of a contract between the GWKDD and Royal Oak. Therefore, the trial court could properly consider those documents for determination of defendant's summary disposition motion under MCR 2.116(C)(8). *Liggett*, 260 Mich App at 133.

Plaintiff argues as it did to the trial court that the resolution and the Final Order of Apportionment constituted a binding express contract between the GWKDD and Royal Oak that the GWKDD breached. We disagree.

The language of the Drainage Board's resolution and its Final Order of Apportionment plainly establish that these two documents neither individually, nor combined, constituted a binding contract between the GWKDD and Royal Oak. The documents expressed no offer or promises made by either party to the other that required acceptance. Nor did the documents express the five elements necessary for the creation of a valid contract in Michigan.

The Drainage Board's resolution and its Final Order of Apportionment expressed independent determinations made by the Drainage Board, as statutorily required under Chapter

-4-

20 of Michigan's drain code of 1956, MCL 280.461 *et seq*. which governs intracounty drains. The GWKDD is a drainage district, a governmental body with powers conferred upon it by law. See MCL 280.5. The drain code authorizes recovery of the costs of county drains necessary for the public health, MCL 280.462, and makes drainage boards responsible for the operation and maintenance of such drains, MCL 280.478.[2] Under the drain code, drainage boards must establish percentages to apportion the costs of operating and maintaining drains to the public corporations assessed for the costs of the drain, considering the benefits that accrue to each public corporation and the extent to which each public corporation contributes to the conditions which make the drain necessary. See MCL 280.468; MCL 280.469; MCL 280.478. Drainage boards are statutorily required to determine, after notice and a hearing, the apportionment of the costs and confirm their determinations by issuance of a final order of apportionment. See MCL 280.469; MCL 280.478. The drain code, however, nowhere provides that a final order of apportionment issued by a drainage board constitutes a contract with the municipal entities to which the order applies. Nor does the drain code grant a right of action to such entities for an alleged breach of a final order of apportionment.

The resolution and Final Order of Apportionment at issue in this case, therefore, constituted a statutorily required determination that apportioned the costs of stormwater disposal and treatment by the DWSD, and allocated to the municipalities in the GWKDD their proportionate share. Neither the resolution nor the Final Order of Apportionment, nor those documents combined constituted contracts on which Royal Oak could base a breach of contract claim. Plaintiff, therefore, failed and could not meet its burden of establishing the existence of a contract. Accordingly, the trial court properly granted summary disposition of plaintiff's breach of contract claim under MCR 2.116(C)(8).[3]

---

[2] MCL 280.462 provides: "County drains which are necessary for the public health may be located, established and constructed under the provisions of this chapter where the cost thereof is to be assessed wholly against public corporations." MCL 280.478 provides, in part: "Any necessary expenses incurred in the administration and in the operation and maintenance of the drain and not covered by contract shall be paid by the several public corporations assessed for the cost of the drain."

[3] Defendant also argues that, because plaintiff's claims were premised on the resolution and Final Order of Apportionment, the claims challenged the propriety of the Final Order of Apportionment and the legality of apportioning the costs to Royal Oak. Defendant contends that plaintiff's claims were barred by the limitations period prescribed under MCL 280.483 which governs challenges to orders of apportionment. We find no merit to defendant's argument because plaintiff's complaint plainly did not challenge the apportionment decision. Further, we decline to review this issue because it is not necessary for the disposition of this case. See *Fast Air, Inc v Knight*, 235 Mich App 541, 549-550; 599 NW2d 489 (1999).

## C. ASSUMPSIT

Plaintiff next argues that the trial court erred by granting defendant summary disposition because, in the absence of an express contract, it could recover the overcharges on equitable grounds in assumpsit for money had and received. We disagree.

A claim in assumpsit is "an equitable action, and can be maintained in all cases for money which in equity and good conscience belongs to the plaintiff." *Hoyt v Paw Paw Grape Juice Co*, 158 Mich 619, 626; 123 NW 529 (1909) (quotation marks and citation omitted). The right to bring an action in assumpsit "exists whenever a person, natural or artificial, has in his or its possession money which in equity and good conscience belongs to the plaintiff, and neither express promise nor privity between the parties is essential." *Id*. at 626 (citation and emphasis omitted); see also *Trevor v Fuhrmann*, 338 Mich 219, 223-224; 61 NW2d 49 (1953). As our Supreme Court explained in *Moore v Mandlebaum*, 8 Mich 433, 448 (1860):

> We understand the law to be well settled that an action of assumpsit for money had and received is essentially an equitable action, founded upon all the equitable circumstances of the case between the parties; and if it appear, from the whole case, that the defendant has in his hands money, which, according to the rules of equity and good conscience, belongs, or ought to be paid, to the plaintiff, he is entitled to recover; and that as a general rule, where money has been received by a defendant under any state of facts which would in a court of equity entitle the plaintiff to a decree for the money, when that is the specific relief sought, the same state of facts will entitle him to recover the money in this action.

"The basis of a common-law action for money had and received is not only the loss occasioned to the plaintiff on account of the payment of the money, but the consequent enrichment of the defendant by reason of having received the same." *Trevor*, 338 Mich at 224-225.

In this case, plaintiff alleged a claim in assumpsit for money had and received on the ground that the GWKDD improperly overcharged Royal Oak contrary to the Drainage Board's resolution. Plaintiff based that alternative claim on its position as Royal Oak's assignee. Plaintiff did not dispute that Royal Oak passed through the alleged overcharges to its water and sewer ratepayers. The trial court ruled that plaintiff, as Royal Oak's assignee, could not maintain the assumpsit claim because Royal Oak suffered no recoverable loss. The trial court did not err in this regard.

Under Michigan law, an assignee stands in the shoes of the assignor and acquires only the same rights as the assignor and remains subject to the same defenses as the assignor. *Coventry Parkhomes Condo Ass'n v Fed Nat'l Mortg Ass'n*, 298 Mich App 252, 256-257; 827 NW2d 379 (2012). Therefore, as Royal Oak's assignee, plaintiff acquired no more rights than Royal Oak had at the time of the assignment and it remained subject to the same defenses as Royal Oak. In this case, plaintiff sought a refund of the alleged overcharges as Royal Oak's assignee. Royal Oak, however, passed through to its water and sewer ratepayers the GWKDD's charges by incorporating them into the water and sewer rates. Royal Oak suffered no loss because the funds it paid to the GWKDD were recovered from its ratepayers who paid their water and sewer bills. The record reflects that plaintiff conceded at the hearing that Royal Oak did nothing wrong and had authority to charge its ratepayers whatever amount the GWKDD charged Royal Oak,

including the alleged overcharges, because Royal Oak was "purely a pass-through." Thus, if the GWKDD overcharged and collected fees from Royal Oak for stormwater disposal, plaintiff can claim no right to recover from the GWKDD because Royal Oak suffered no loss from its payment of the alleged overcharges. Royal Oak passed on the charges and passed on the ratepayers' payments. Royal Oak recouped any excess payments from its water and sewer ratepayers. Royal Oak had no claim against the GWKDD that it had in its possession money which in equity and good conscience belonged to Royal Oak. Royal Oak, therefore, occasioned no compensable loss. *Trevor*, 338 Mich at 224-225; *Hoyt*, 158 Mich at 626. The trial court correctly discerned that Royal Oak had no claim in assumpsit. Consequently, plaintiff failed and could not state a claim in assumpsit.

Plaintiff argues that federal antitrust law principles articulated in the United States Court of Appeals for the Sixth Circuit's decision in *Oakland Co v Detroit*, 866 F2d 839 (CA 6, 1989) and the Supreme Court's decision in *Illinois Brick Co v Illinois*, 431 US 720; 97 S Ct 2061; 52 L Ed 2d 707 (1977) should be considered and applied in this case. Both of those cases, however, are distinguishable because in *Oakland Co*, the Sixth Circuit addressed whether counties had standing to bring a federal antitrust action and seek treble damages under the Racketeering Influence and Corrupt Organizations Act (RICO), and in *Illinois Brick*, the Supreme Court addressed who could seek recovery under the Clayton Act in an antitrust action. The courts considered who constituted an injured party within the meanings of RICO and the Clayton Act for federal antitrust violation claim purposes. The courts based their decisions on concerns that holding otherwise would lead to the filing of numerous antitrust actions and unmanageable antitrust class actions that presented enormous evidentiary complexities and uncertainties. We do not find the rationale for the courts' decisions applicable in this case. Further, neither case involved an equitable action in assumpsit. Accordingly, we decline to apply federal antitrust law principles in this case.

Although the ratepayers may have had viable claims against a government entity for the overcharges they allegedly paid,[4] the class members settled and released Royal Oak from any and all liability for refunds of their alleged overpayments. Under *Hoyt*, the right to bring an action for assumpsit must be held by the plaintiff who can establish that the defendant has in its possession money which, in equity and good conscience, belonged to the plaintiff. In this case, plaintiff sued as Royal Oak's assignee for recovery of money paid to the GWKDD. The money plaintiff sought did not belong to Royal Oak, its assignor, but to the ratepayers. Therefore, the

---

[4] See *Bond v Public Schools of Ann Arbor*, 383 Mich 693; 178 NW2d 484 (1970).

trial court did not err by granting the GWKDD summary disposition of plaintiff's claim in assumpsit.[5]

## III. GOVERNMENTAL IMMUNITY

Defendant argues that, in the absence of a contract, plaintiff's claims constituted negligence claims subject to government immunity under the Governmental Tort Liability Act (GTLA), MCL 691.1401 *et seq*. Plaintiff counters by asserting that the trial court correctly decided that government immunity did not apply in this case. We agree that the trial court correctly determined this issue.

Under MCR 2.116(C)(7), "[s]ummary disposition may be granted when, among other things, a claim is barred by governmental immunity." *Dybata v Wayne Co*, 287 Mich App 635, 637; 791 NW2d 499 (2010). "When considering a motion brought under subrule (C)(7), the trial court must consider any affidavits, depositions, admissions, or other documentary evidence submitted by the parties to determine whether there is a genuine issue of material fact precluding summary disposition." *Id.* (citations omitted). "If no facts are in dispute, or if reasonable minds could not differ regarding the legal effect of those facts, then the question whether the claim is barred by governmental immunity is an issue of law." *Id*. at 637. Further, this Court reviews de novo the application of governmental immunity. *Id.* at 638.

"The [GTLA] provides 'broad immunity from tort liability to governmental agencies whenever they are engaged in the exercise or discharge of a governmental function.' " *Milot v DOT*, 318 Mich App 272, 276; 897 NW2d 248 (2016), quoting *Ross v Consumers Power Co (On Rehearing)*, 420 Mich 567, 595; 363 NW2d 641 (1984). There is no dispute that the GWKDD, a unit of Oakland County, a political subdivision of the state of Michigan, is a governmental entity generally immune from tort liability under MCL 691.1407(1). *Milot*, 318 Mich App at 276. This Court explained in *Yellow Freight Sys, Inc v State of Michigan*, 231 Mich App 194, 203; 585 NW2d 762 (1998), rev'd on other grounds 464 Mich 21 (2001), rev'd 537 US 36; 123 S Ct 371; 154 L Ed 2d 377 (2002), that "[a]n action in assumpsit for money had and received is not an action in tort." "Therefore, governmental immunity from tort liability under MCL 691.1407 . . . does not apply." *Id*. Accordingly, we find no merit to defendant's argument that, in the absence of a contract, plaintiff's assumpsit claim should have been construed as a negligence claim barred by governmental immunity. We hold that the trial court did not err in concluding that governmental immunity did not apply in this case.

---

[5] Defendant also argues that this action improperly imposed against it a certified class from the earlier settled action despite the fact that defendant was not a party to that action. Although defendant raised this issue before the trial court, the trial court did not decide the issue. Therefore, the issue was not preserved for review by this Court and we decline to review it. Further, the issue is not necessary for the disposition of this case. *Fast Air, Inc*, 235 Mich App at 549-550.

## IV. AMENDED COMPLAINT

Plaintiff also argues that the trial court erred by granting defendant's motion to strike its first amended complaint and by denying its motion for leave to amend under MCR 2.118(A)(2) based on futility. We disagree.

We review for an abuse of discretion a trial court's decision to strike a pleading. *Belle Isle Grill Corp v Detroit*, 256 Mich App 463, 469; 666 NW2d 271 (2003). We also review for an abuse of discretion a trial court's decision regarding a motion for leave to file an amended complaint. *Kostadinovski v Harrington*, 321 Mich App 736, 742-743; 909 NW2d 907 (2017). An abuse of discretion occurs when the court's decision results in an outcome outside the range of principled outcomes. *Decker v Trux R US, Inc*, 307 Mich App 472, 478; 861 NW2d 59 (2014). A trial court abuses its discretion when it makes an error of law. *Kostadinovski*, 321 Mich App at 743. We review de novo a trial court's interpretation of a court rule. *Acorn Investment Co v Mich Basic Prop Ins Ass'n*, 495 Mich 338, 348; 852 NW2d 22 (2014). "[W]hether a claim for unjust enrichment can be maintained is a question of law" subject to de novo review. *Morris Pumps*, 273 Mich App at 193.

"The principles of statutory construction apply to the interpretation of the Michigan Court Rules." *Decker*, 307 Mich App at 479. We look to " 'the plain language of the court rule in order to ascertain its meaning' and the 'intent of the rule must be determined from an examination of the court rule itself and its place within the structure of the Michigan Court Rules as a whole.' " *Id.*, quoting *Henry v Dow Chem Co*, 484 Mich 483, 495; 772 NW2d 301 (2009). " 'If the rule's language is plain and unambiguous, then judicial construction is not permitted and the rule must be applied as written.' " *Decker*, 307 Mich App at 479, quoting *Jenson v Puste*, 290 Mich App 338, 342; 801 NW2d 639 (2010).

In this case, plaintiff filed the complaint on June 20, 2017. In lieu of answering, on August 18, 2017, the GWKDD moved for summary disposition pursuant to MCR 2.116(C)(7) and (C)(8). Before responding to the GWKDD's summary disposition motion, plaintiff filed an amended complaint. That prompted the GWKDD to move to strike plaintiff's amended complaint under MCR 2.115(B) on the ground that its filing of a motion for summary disposition precluded plaintiff from filing an amended complaint without first obtaining leave from the trial court under MCR 2.118(B)(2). At the hearing on the GWKDD's motion to strike, the trial court held in abeyance its ruling. Nevertheless, the trial court later entered an order granting the GWKDD's motion and striking plaintiff's amended complaint.

MCR 2.118 governs amendment of a party's pleadings. *Ligons v Crittenton Hosp*, 490 Mich 61, 80; 803 NW2d 271 (2011). MCR 2.118(A) provides, in pertinent part:

> (1) A party may amend a pleading once as a matter of course within 14 days after being served with a responsive pleading by an adverse party, or within 14 days after serving the pleading if it does not require a responsive pleading.

> (2) Except as provided in subrule (A)(1), a party may amend a pleading only by leave of the court or by written consent of the adverse party. Leave shall be freely given when justice so requires.

MCR 2.118(A)(1) permits a party to "amend a pleading once as a matter of course within 14 days after being served with a responsive pleading by an adverse party[.]" *Ligons*, 490 Mich at 80 (quotation marks and citation omitted). MCR 2.110(A) specifies that the term "pleading" includes only a complaint, a cross-complaint, a counterclaim, a third-party complaint, an answer, and a reply to an answer, and states that "[no] other pleading is allowed." "[W]hen a court rule specifically defines a given term, that definition alone controls." *Ligons*, 490 Mich at 81 (quotation marks and citation omitted). The GWKDD's motion for summary disposition, therefore, was not a responsive pleading. *Huntington Woods v Ajax Paving Indus, Inc*, 179 Mich App 600, 601; 446 NW2d 331 (1989). Accordingly, plaintiff's right as a matter of course to amend its complaint under MCR 2.118(A)(1) was not triggered by GWKDD filing of its motion for summary disposition of plaintiff's claims in its original complaint. Plaintiff's filing without leave to amend did not comport with the requirements of MCR 2.118(A)(1). The trial court, therefore, did not abuse its discretion by striking plaintiff's improperly filed amended complaint.

The record reflects that plaintiff then moved for leave to amend its complaint to state two claims in assumpsit and to assert a new count for unjust enrichment. Under MCR 2.118(A)(2), "[a] court should freely grant leave to amend a complaint when justice so requires." *Lane v Kindercare Learning Ctrs, Inc*, 231 Mich App 689, 696; 588 NW2d 715 (1998). In *Lane*, this Court explained:

> Ordinarily, a motion to amend a complaint should be granted, and should be denied only for the following particularized reasons: (1) undue delay, (2) bad faith or dilatory motive on the part of the movant, (3) repeated failure to cure deficiencies by amendments previously allowed, (4) undue prejudice to the opposing party by virtue of allowance of the amendment, or (5) futility of the amendment.
>
> * * *
>
> An amendment is futile if it merely restates the allegations already made or adds allegations that still fail to state a claim. [*Id.* at 697 (citations omitted).]

In this case, the record reflects that the trial court considered plaintiff's proposed amended complaint and determined that the amended allegations and proposed unjust enrichment claim failed to overcome plaintiff's original complaint's deficiencies and failed to state a claim upon which relief could be granted. The trial court concluded that plaintiff's new unjust enrichment claim was futile for the same reasons that plaintiff's assumpsit claim failed.

The equitable right of restitution exists when a person has been unjustly enriched at another person's expense. *Morris Pumps*, 273 Mich App at 193. The law will imply a contract "to prevent unjust enrichment when one party inequitably receives and retains a benefit from another." *Id*. at 194; see also *Belle Isle Grill*, 256 Mich App at 478. To sustain a claim of unjust enrichment, "a plaintiff must establish (1) the receipt of a benefit by the defendant from the plaintiff and (2) an inequity resulting to the plaintiff because of the retention of the benefit by the defendant." *Morris Pumps*, 273 Mich App at 195. "In other words, the law will imply a contract to prevent unjust enrichment only if the defendant has been unjustly or inequitably enriched at the plaintiff's expense." *Id*.

-10-

In this case, plaintiff stood in the shoes of Royal Oak as its assignee. It alleged in its proposed amended complaint that the GWKDD was unjustly enriched by overcharging Royal Oak for the costs of stormwater disposal. Although plaintiff alleged that the GWKDD received a benefit and asserted that it would be unjust for the GWKDD to retain the alleged overcharges, plaintiff cannot establish any inequity resulting to Royal Oak from the GWKDD's retention of the overcharges because Royal Oak passed through to ratepayers the alleged overcharges and recouped from them the amount it allegedly overpaid. While the retention of the alleged overcharges collected by the GWKDD may have resulted in an inequity to the ratepayers, Royal Oak suffered no loss. The record reflects that plaintiff did not specifically allege in its proposed amended complaint that any inequity resulted to Royal Oak. Royal Oak could not state a claim for unjust enrichment under the circumstances presented in this case. Therefore, plaintiff, as Royal Oak's assignee, could not state a claim for unjust enrichment. Because Royal Oak admittedly passed through the charges to its water and sewer ratepayers, the GWKDD was not unjustly enriched at the expense of Royal Oak. *Id*. at 195. Accordingly, plaintiff's proposed unjust enrichment claim suffered from the same defect as its assumpsit claim and the trial court could properly deny plaintiff's motion to amend on the ground of futility. Therefore, the trial court did not abuse its discretion by denying plaintiff's motion for leave to amend its complaint.

Affirmed.

/s/ Christopher M. Murray
/s/ David H. Sawyer
/s/ James Robert Redford